FRANK G. PIERCE, Appellant, v. C. F. GREEN et al., Appellees.

No. 45167.

September 24, 1940.

Hirschburg & Reynolds and Newell Cadwell, for appellant.

Fred D. Everett, Attorney General, and John E. Mulroney, Assistant Attorney General, for appellees.

BLISS, J.—Since all facts properly pleaded are conceded by the defendants' motion to dismiss plaintiff's substituted petition, the question for determination is the sufficiency of those facts to entitle the plaintiff to the relief prayed for. In substance, the substituted petition, filed September 16, 1939, alleges: that the plaintiff is a resident and taxpayer of the city of Marshalltown, Iowa, owning both real and personal property, which is located in said city, and brings this suit in his own behalf and in behalf of all other taxpayers similarly situated in Iowa; that since the filing of his petition on June 28, 1939, the defendant Nelson succeeded Louis E. Roddewig as a member of the commission, and took·part in the assessments complained of; that at various meetings of the commission in July and August 1939 the defendant members made all of the original assessments required by law to be made by them, including the property owned by electric light and power companies, railroad companies and telegraph and telephone companies; that said companies furnished to the commission all information necessary to enable it to make a legal and equitable assessment of their properties, but said commission ignored said information, and failed to exercise its discretion based on the information, and made arbitrary, fraudulent, dishonest and illegal assessments contrary to the statutes of the state; that the commission granted plaintiff a hearing in June 1939 at which time he presented evidence that assessments by the commission had caused him to pay more taxes than he should have paid, if the members of the commission had performed their duties; that at said hearing the defendants stated that they were familiar with law, and that they had not complied with the law and did not intend to, giving as a reason that they would not change a method which had always been used, even though it might be wrong, and admitted that in some counties farm land was assessed as high as 100 percent and in other counties was assessed as low as 50 percent; that plaintiff at the hearing presented proper evidence showing that defendants in the past had not made assessments at anything approaching

actual value, all of which each of said defendants admitted, but refused, on demand of the plaintiff to make the assessments for the year 1939, or at any future years, at what they deemed to be actual value; that thereafter in July and August 1939 the defendants met and assessed all properties required by law to be assessed by them, at values that were but a small percentage of their actual value, and in making the said assessments the defendants did not use their discretion, but arbitrarily, intentionally, fraudulently, dishonestly and illegally assessed said properties at grossly inadequate sums; that when making said assessments the defendants had before them information and facts from three different sources, showing the actual value of the taxable property of each company, first, by statements prepared by competent engineers employed by the commission to ascertain the actual value of the property of each company, whose property they were required to assess; second, by statements prepared and sworn to by each company and filed with the commission as required by law; third, by the estimates of actual value based upon the net earnings of each company capitalized; that a comparison of the assessed values fixed by defendants, with any or all of the estimates of actual value from the three sources, shows conclusively that defendants in making said assessments did not use their honest discretion, but arbitrarily, intentionally, fraudulently, dishonestly and illegally assessed said properties at a grossly inadequate sum; that defendants have full knowledge of the law requiring them to assess all such properties at their actual value; that they admitted that said properties have been intentionally and knowingly assessed at from 14 to 82.5 percent of the actual value thereof, or an average of 61.3 percent below actual value, all of which they then knew and now know to be in violation of the statutes of the state; that defendants in so assessing said property, at values that were but a small percentage of the actual value, caused plaintiff and all other taxpayers similarly situated in Iowa, to pay much more than their equitable share of county, school, and state taxes; that at the meetings of the commission in July 1939 or at other times in that year, the defendants made assessments of properties of the percentages of actual values of companies, as herein set out, to wit:

| Name of Company | Assessed Value | Actual Value | Percentage |
|---|---|---|---|
| Iowa Public Service Co. | $8,820,478 | $29,927,675 | 29.4 |
| Iowa Electric Light & Power Co. | 7,916,342 | 31,289,506 | 25.3 |
| Des Moines Electric Company | 4,084,688 | 18,000,000 | 22.6 |
| Iowa Power & Light Co. | 6,457,909 | 18,984,787 | 30.3 |
| Council Bluffs Gas Co. | 1,063,000 | 2,395,765 | 30.8 |

; that in making all of said assessments the defendants refused to use their honest discretion, but knowingly, intentionally, arbitrarily, fraudulently, dishonestly and illegally assessed said properties at the values above stated, well knowing that they were not the actual values, but were only the percentages thereof set forth; that the statutes of the state provide that the commission shall adjust the valuations of property in the various counties of the state by adding to or deducting from the valuation of each kind or class of property such percentage in each case as will bring the property to be assessed to its actual value; that the plaintiff at said hearing in June 1939 presented proper evidence that, in accordance with specific instructions from the defendants, all local assessors in the state assessed property, required by law to be assessed by them, at 60 percent of its actual value, all in violation of the laws of the state; that at said hearing the defendants admitted that they had instructed the local assessors to assess property at 60 percent of its actual value, and further stated that they knew that property in some counties was assessed at 100 percent of its actual value, while property in other counties was assessed at only 50 percent of its actual value; that defendants at said time refused to and have since refused to make any adjustments of said valuations, all in violation of the statutes of the state; that the defendants, at the time they made assessments and adjustments in July and August 1939, had in their possession from the county auditors all necessary information to enable them to adjust valuations of property in the several counties so that it would be assessed at the actual value thereof, but without using their honest discretion, they intentionally, arbitrarily, fraudulently, dishonestly and illegally neglected and refused to make any adjustments,

and allowed said assessments to remain unchanged, well knowing that some counties were assessed at 100 percent of actual value while others were assessed at only 50 percent of actual value; that defendants, as a result of their said actions, have caused taxes to be levied against and paid by plaintiff that are confiscatory and inequitable in violation of the statutes and the state and federal constitutions; that he has no plain, speedy and adequate remedies at law. In addition to specific relief heretofore stated, the plaintiff prayed for general equitable relief.

Defendants filed a motion to dismiss this petition upon grounds in substance as follows:

"1. That the action was an action against the State of Iowa without its consent.

"2. That the action constituted an effort to subject the executive department of government to interference by the judicial department of government.

"3. That the plaintiff does not have a direct interest in the subject matter of the action.

"4. That the question involved in the action is moot in that the petition showed that the assessments had already been made.

"5. That the petition failed to state any default on the part of defendants that resulted in plaintiff's damage and it did seek to control the future actions of the defendants, and it was therefore premature.

"6. That plaintiff had a plain, speedy and adequate remedy in the ordinary course of law.

"7. That the petition failed to allege that uniformity or equality of assessment would result if the writ were granted and petition showed that inequality of assessment would be the result.

"8. That the petition showed that the issuing of such a writ would disturb official action, create confusion and make it impossible for the officers to perform the duties of their office within the time fixed by law.

"9. That the action sought to be controlled by the writ of mandamus would be beyond the jurisdiction of the defendant commission to perform in that no authority is granted under

the Iowa law to the defendant commission to change or alter assessments already made.''

The motion having been sustained, the plaintiff elected to stand upon his pleading, and· decree was entered for defendants and against the plaintiff.

Before discussing the particular questions raised and argued, we call attention to certain constitutional and statutory provisions that are pertinent to the matters involved.

In almost all of the constitutions of the states there are provisions requiring that taxation be equal and uniform. These provisions vary in their phraseology. Some are general, and others are quite specific and definite. These provisions of the Iowa constitution are of the first class. Section 6 of Article I provides: ''All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.'' Section 30 of Article III provides: ''The General Assembly shall not pass local or special laws in the following cases:

''For the assessment and collection of taxes for State, County, or road purposes; * * *. In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State; * * *.''

Section 2 of Article VIII provides: ''The property of all corporations for pecuniary profit, shall be subject to taxation, the same as that of individuals.'' These are all of the provisions of the state constitution which are pertinent to our inquiry. The fourteenth amendment to the Constitution of the United States, among other things, provides that no state shall deny ''to any person within its jurisdiction the equal protection of the laws.'' As Judge Cooley stated in his excellent work on ''The Law of Taxation'' (4th Ed.), Volume I, section 249: ''There is no question as to the applicability of this provision to taxation. The provision imposes a limitation upon all the powers of the state which can touch the individual or his property, including among them that of taxation.''

The text is supported by numerous decisions of the state and federal courts.

To accomplish the purpose of the equality and uniformity provisions of the constitution, it is necessary that there be uniformity, not only in the rate or percentage of taxation, but also in the rate or percentage of the valuation of property, which is taken as the base to which the rate of taxation is to be applied. It needs no mathematical calculation to demonstrate that, if there be lack of uniformity in either factor of the problem of taxation, there will be lack of uniformity in the tax burden. The provisions of the state constitution, above noted, are not self-executing, but require legislative action to make them effective. The constitutional provisions do not specify that any particular valuation of property, or percentage of valuation, shall be used as a base for computing the tax. The essential of uniformity is effected whether a full or 100 percent valuation, or a less percentage of valuation, is taken, if the same percentage is used with respect to all property of the same class. The statutory requirement in this state has always been, that, for taxation purposes, property should be valued at its true, or actual value, though, for many years, the assessed or taxable value was by statute fixed at 25 percent of the actual value. Since the enactment of section 75 of chapter 121 of the Laws of the Forty-fifth General Assembly, in 1933, the statutory requirement has been that all taxable property shall be valued, assessed, and taxed at its actual value. This legislation is found in section 7109 of the Codes of 1935 and 1939, and is as follows:

"Actual, assessed, and taxable value. All property subject to taxation shall be assessed at its actual value which shall be entered opposite each item. The terms 'actual value', 'assessed value' and 'taxable value' shall hereafter be construed as referring to 'actual value'. The tax rate shall be applied to the actual value, except as otherwise provided. * * *"

Such provisions, as the foregoing, whether in the constitution or in the statute, quite uniformly and universally, have been more observed in the breach than in the performance. Such has been the practice in Iowa.

Of this matter Prof. James C. Bonbright, of Columbia University, in his late work "The Valuation of Property", Volume I, pages 497, 498, says:

"Theoretically the taxpayer's pocket is not in the least affected by uniform undervaluation or overvaluation. Systematic undervaluation diminishes the tax base, and the tax rate must therefore rise in order to supply the required government revenue. * * * The objections to the practice of undervaluation are patent. In the first place, except where sanctioned by statute, it involves a generally known and sanctioned disregard by officials of the law requiring them to assess property at its full and fair value. The other great vice is that the percentage of undervaluation is rarely a matter of common knowledge, so that it is extremely difficult to ascertain whether there is uniformity in the proportion or whether, through incompetence, favoritism, or corruption of the assessors, some portions of the taxpaying body are bearing the others' burdens, as between either individuals or local groups."

The important parts of the official machinery designated by the legislature to value property for taxation, and to properly adjust the burdens of taxation are the assessor, the local board of review (section 7129), the county auditor, the county board of review (section 7137), the district court to which appeals from the said board of review may be taken (sections 7133, 7138), and the state board of review (sections 7140, 7141). The assessor turns in his assessment roll to the local board of review, which is the city or town council, or the township trustees outside of cities and towns. The local board may raise or lower individual assessments, and may add omitted assessments. The county board of review is the board of supervisors, and it adjusts the assessments of the several townships, cities, and towns of the county, and may add to or deduct from the assessed values thereof. The state board of review is the state tax commission, which meets on the second Monday of July in each year to adjust the valuation of property in the several counties, by adding to or deducting from the valuation of each kind or class of property such percentage in each case as will bring the same to its

taxable value as fixed in chapters 330 to 344, inclusive, of the Code. The taxable value under Code section 7109 is the actual value.

Prior to the adoption of chapter 205 of the Laws of the Forty-third General Assembly, in 1929, the executive council, consisting of the governor, and the secretaries of state, treasury, agriculture and the state auditor, was the state board of review. By that chapter the "state board of assessment and review" was created to take over all duties of the executive council with reference to tax assessments and adjustments. This chapter gave broadened and additional powers to the new board. It consisted of three appointees of the governor, having no other official connection with the state government. Its work became a full-time job having only to do with tax matters. By chapter 174 of the Laws of the Forty-eighth General Assembly, the name of the board was changed to the "State Tax Commission", effective April 7, 1939. Under the Act of the Forty-third General Assembly and later legislative amendments, the tax commission continues to originally assess the public service companies, the same as had been done by the executive council. These companies and the relevant code sections and chapters pertaining to the valuation, assessment, and taxation of the property of each are here noted. Public utility plants (section 6982.1 et seq., Code, 1939). Telegraph and telephone companies (chapter 336). Railway companies (chapter 337). Freight-line and equipment companies (chapter 338). Express companies (chapter 339). Electric transmission lines (chapter 340). Pipe-line companies (chapter 340.1). The statutes provide that all of these companies shall report their properties to the tax commission to be valued, assessed and taxed at their actual values.

I. Is this a suit against the state of Iowa and prohibited by the eleventh amendment to the Constitution of the United States? The appellees answer this question in the affirmative, but they offer neither principle nor applicable precedent to sustain their contention. They cite De Votie v. Iowa State Fair Board, 216 Iowa 281, 249 N. W. 429; De Votie v. Cameron, 221 Iowa 354, 265 N. W. 637; Iowa Electric Co. v. Board of Control, 221 Iowa 1050, 266 N. W. 543; Cross v. Donohoe, 202 Iowa 484, 210 N. W. 532; Wilson v. Louisiana P. E. Com., 133 Iowa 586, 110

N. W. 1045, 119 Am. St. Rep. 646; and State v. Cameron, 177 Iowa 262, 158 N. W. 470, L. R. A. 1916F, 578. The first case was one for personal injuries accidentally received by a spectator at the fair from a collision of the airplanes of two stunt flying exhibitors. Failing to recover against the board, plaintiff then brought suit in the second case against the individual officers. In the third case the facts presented on appeal were insufficient to enable this court to pass upon the question. In the fourth case an employee at the state hospital at Cherokee sued the superintendent for services performed for the state. The fifth case was one for criminal nuisance against the officers of the fair in constructing a sewer on the state fairgrounds. The last case was a suit in mandamus to compel the Louisiana Purchase Exposition Commission of the state of Iowa to pay plaintiff his bill for services rendered the commission. In none of these civil cases was the state or its arm, board, or agency suable. The suits were for money demands and no one can seriously contend that action could be brought against the state or any arm or agency of the state.

In the case before us no judgment or decree is asked against the state, nor is any claim made, nor any liability sought to be established, against it. If the state has any interest in this case it is that its officers perform their duties. The defendants, under the record here made, have and are violating a legislative command of the state to assess and tax all property at its actual value. Their failure to comply with this mandate imposes an unfair and disproportionate share of the tax burden of the state upon the plaintiff and those in like situation, and permits others to escape their equitable share of that burden.

In McKeown v. Brown, 167 Iowa 489, 498, 149 N. W. 593, 596, the defendant refused to comply with a legislative command. We there said:

"It is true that, under some circumstances, an action against a state officer is held to be in substance an action against the state, and therefore forbidden. But where the law imposes a duty upon a state officer and his refusal or failure to perform it affects injuriously the personal or property right of an individual, it cannot be that the court is without power or authority to administer an appropriate remedy. To so hold is to make every

administrative officer a law unto himself and open the door to grave abuses.''

This matter was fully discussed by the court in Hoover v. Iowa State Highway Com., 207 Iowa 56, 58, 61, 222 N. W. 438, 439, 440. Speaking through Justice Kindig, the court said:

''Manifestly, the state highway commission, for certain purposes, is an arm of the state, and cannot be interfered with by suit or other legal proceedings, when performing its official duties for the sovereignty, without fraud, *illegality, or in derogation of statutory authority.* * * * Can there be no remedy, then, in the courts of law or equity for the violation of a private right or the threatened misappropriation of property on the part of state officials who are acting illegally and without authority? * * * Appellant does not attempt to obtain money from the state, or interfere with its sovereignty or the administration of its affairs through proper agencies. On the other hand, he only wants to protect his property from destruction by the agents of the state who exceed their authority and thereby seek to take it from him, not with, but without, legal right, *and in opposition to a legislative guaranty.* Clearly, the power of the courts to restrain state officials from violating plain provisions of the statute and Constitution is in no way derogatory to the general and well recognized rule that the state cannot be sued without its consent.'' (Italics are ours.)

The case of Huidekoper v. Hadley, from the Eighth Circuit, 177 F. 1, 40 L. R. A., N. S., 505, is a leading case on a number of the questions involved herein. There the plaintiff held bonds of Macon county, Missouri, and the taxing bodies failed to assess property at its true value, in order to prevent the creation of a fund to pay the indebtedness, and the board of equalization of the state, for the same purpose, failed and refused to make proper equalizing adjustments. A petition for a writ of mandamus against this state board and the county board to compel them to comply with the law was instituted, and the relief was granted. The defendants contended that the suit was one against the state, and that their action in declining to equalize the property of the state as requested by the relator was the exercise of a discretion

which was not reviewable by the courts. In refuting this contention the court said:

"This brief epitome of legislation clearly discloses that the policy of the state requires property to be assessed on the basis of its true value in money, and that a duty is cast upon the State Board to equalize the property among the several counties of the state on that basis. Without now discussing the exact nature of that duty, its extent, or its limitations, it is sufficient, for our present purpose, to observe that it is an imperative duty imposed by the law of the state. A majority of its members constituting a working quorum refused to permit the board to perform that duty and compelled it to decline to do so. In so acting they did not stand for the state of Missouri and were not the state within the meaning of the eleventh amendment of the Constitution. A sovereign state must be presumed to be willing that its laws shall be obeyed. Through its laws it spoke to its servants and commanded them to do something. Certainly those servants by their act of disobedience do not represent or stand for the state. This suit, therefore, instead of being against the state, is against its servants to compel them to do a duty which, by accepting office, they agreed to perform.

"A few authorities out of the many which might be referred to may not be out of place here."

Another of the leading cases supporting the position of the appellant herein is Taylor v. Louisville & N. R. Co., from the Sixth Circuit, 88 F. 350, 356, in which injunction was sought and obtained against the state board of equalization, restraining excessive assessments against the railroad as compared to assessments against property generally. Speaking through Judge Taft, the court said:

"The complaint of the taxpayer in this case is that the defendants are about to execute a taxing law of the state against complainant in such a manner that, in view of the mode in which other taxing laws are executed against a large part of the taxable property of the state, the defendants will impose upon complainant an illegal burden, in violation of its right under the state constitution to pay only an equal share of the

taxes in proportion to the value of its property. This is not a suit against the state. It is a suit against individuals, seeking to enjoin them from doing certain acts which they assert to be by the authority of the state, but which the complainant avers to be without lawful authority. The point has been so often decided by the supreme court of the United States that it is sufficient to refer to a few of the cases. Smyth v. Ames, 169 U. S. [467] 518, 18 S. Ct. 423; Reagan v. Trust Co., 154 U. S. 362, 390, 391, 14 S. Ct. 1047 [38 L. Ed. 1014]; Pennoyer v. McConnaughy, 140 U. S. 1, 11 S. Ct. 699; Poindexter v. Greenhow, 114 U. S. 270, 5 S. Ct. 903, 962. In Cummings v. Bank, 101 U. S. 153, a decree of injunction entered by a circuit court of the United States against state officers to prevent the enforcement of a state tax law in a manner violating the constitution of the state was affirmed by the supreme court of the United States, and it was then so well settled that such a suit was not within the eleventh amendment that the court did not deem it necessary to discuss the point.''

Other authorities upholding the position of the appellant on this point are State Board of Equalization v. People, 191 Ill. 528, 61 N. E. 339, 58 L. R. A. 513; Greene v. Louisville & I. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Reagan v. Farmers Loan & Trust Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Scottish Union & Nat. Ins. Co. v. Herriott, 109 Iowa 606, 80 N. W. 665, 77 Am. St. Rep. 548; Louisville & N. R. Co. v. Bosworth, 209 F. 380; White Eagle Oil & Refining Co. v. Gunderson, Governor, 48 S. D. 608, 205 N. W. 614, 43 A. L. R. 397; Rolston v. Missouri Fund Commissioners, 120 U. S. 390, 7 S. Ct. 599, 30 L. Ed. 721; Louisville & N. R. Co. v. Com., 63 Fla. 491, 58 So. 543, 44 L. R. A., N. S., 189, 205, with brief; United States v. Lee, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A., N. S., 932, 14 Ann. Cas. 764; Apalachicola Land & Development Co. v. McRae, 86 Fla. 393, 98 So. 505.

II. Is the relief asked by plaintiff an illegal interference by the judiciary with the executive department? In our judgment it is not. A number of the cases cited in division I hereof touch upon this question and sustain our conclusion. See

Hoover v. Iowa State Highway Com., 207 Iowa 56, supra. The question was quite definitely settled against the defendants' contention by this court in Bryan v. Cattell, 15 Iowa 538, 542, a mandamus suit against the state auditor. The court said:

"No one now doubts the power of the judicial department to declare void an act of the Legislature, if in conflict with the Constitution, though the act may have been passed with all the required formalities, and received the executive sanction. And yet we have never heard it suggested that in this, the judicial was exercising functions appertaining to the legislative department. Nor has it to our knowledge ever been supposed that in exercising such power, the courts assumed that the legislative and executive were inferior to the judicial power. The Constitution, by the inhibition in question, designed, (we state the proposition by way of illustration), to prevent the executive of the State from being at the same time a judge of the Supreme Court; a member of this Court from being, during his term of service, Secretary of State, or Treasurer; a member of the Senate or House from being Governor; the judicial department from discharging duties or exercising the functions devolving upon or appertaining to the executive. Thus, the Governor cannot adjudicate cases pending in this Court, nor can this Court grant pardons and reprieves. So neither can this Court make the law, nor can the Legislature assess fines, or render judgments. To some tribunal, however, must be entrusted the power of passing upon the legality of the acts of those filling these several departments, and especially the executive and legislative. And to assume that if this power is exercised, there is an interference with the functions of such other departments, awards conclusiveness to their action. For such action either is or is not conclusive. No one pretends that it is always free from examination or correction. If claimed to be illegal, what tribunal, under our form of government, determines it? Most clearly the judicial."

In that opinion the court quotes from the able opinion of Chief Justice Marshall of the Kentucky court, in Page v. Hardin, 8 B. Monroe 648 [47 Ky. 648], the following language on pages 544 and 545 of this court's opinion, to wit:

" 'The executive department and all of its officers are as much bound by the constitution and laws, as the legislative, and have no more power to violate the rights of individuals secured by law. The power, obviously judicial, of ascertaining and expressing the legal rights of individuals, is in effect the power of protecting those rights from violation by the act or authority either of individuals or of the legislative * * * departments; * * * The judiciary pretends to no direct control over the action of the Legislature, or of the supreme executive. But it may decide upon the validity of the acts of either, affecting private rights. And by the writ of *mandamus* it may coerce a ministerial officer, though of the executive department, to the performance of a legal duty for the effectuation of a legal right.' "

On an analogous matter, the Supreme Court of the United States, speaking through Justice Miller, in United States v. Lee, 106 U. S. 196, 218, 220, 1 S. Ct. 240, 27 L. Ed. 171, on pages 181 and 182, said:

"Looking at the question upon principle, and apart from the authority of adjudged cases, we think it still clearer that this branch of the defence cannot be maintained. It seems to be opposed to all the principles upon which the rights of the citizen, when brought in collision with the acts of the government, must be determined. In such cases there is no safety for the citizen, except in the protection of the judicial tribunals, for rights which have been invaded by the officers of the government, professing to act in its name. There remains to him but the alternative of resistance, which may amount to crime. * * *

"The defence stands here solely upon the absolute immunity from judicial inquiry of every one who *asserts* authority from the executive branch of the government, however clear it may be made that the executive possessed no such power. Not only no such power is given, but it is absolutely prohibited, both to the executive and the legislative, to deprive any one of life, liberty, or property without due process of law, or to take private property without just compensation.

"These provisions for the security of the rights of the citizen stand in the Constitution in the same connection and upon the same ground, as they regard his liberty and his property.

It cannot be denied that both were intended to be enforced by the judiciary as one of the departments of the government established by that Constitution.  *  *  *

"No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the Government, from the highest to the lowest, are creatures of the law, and are bound to obey it.

"It is the only supreme power in our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives.

"Courts of justice are established, not only to decide upon the controverted rights of the citizens as against each other, but also upon rights in controversy between them and the Government."

As has been judicially stated many times our government, both state and national, is a government of laws and not of men, and so long as it shall remain so, the courts, as the interpreters of those laws, will stand as the arbiters of all litigated matters not only between individuals, but between the individual and any department of the government which transgresses any of his inalienable rights.

III.  Has the plaintiff sufficient interest to entitle him to maintain this action?  The plaintiff is a resident of the city of Marshalltown, Iowa, and a payer of taxes on both real and personal property located in said city.  Under facts stated in the substituted petition and admitted, by the motion of the defendants to dismiss, for the purpose of determining the correctness of the ruling appealed from, the property of the plaintiff was assessed and taxed at 60 percent of its actual value, while the property of those assessed by the defendants, as members of the state tax commission, was assessed and taxed at a much lower percentage of its actual value.  It is further so admitted that the defendants knew that they were required by law to assess and tax all such property, at 100 percent of its actual value, as near as they could reasonably and fairly determine, and that they were to equalize assessments of taxable property on the same basis.  But instead of doing so they

knowingly, intentionally and arbitrarily directed assessors to value, assess, and tax property at but 60 percent of its actual value, and, in originally assessing property which they are required by law to assess, they also knowingly, intentionally, and arbitrarily valued, assessed and taxed such property at percentages much lower than 60 percent of the actual value. All of this was systematically done by the defendants, and with the further expressed intention to continue to so do. One does not need a pencil to calculate that such conduct on the part of the defendants was an unjust and unfair discrimination against the plaintiff and those in like situation, causing them to pay a larger share of the tax burden in proportion to the valuation of their property, than those assessed and taxed on a less percentage of valuation, thereby causing damage and injury to the plaintiff and those in like situation which will continue under the expressed intention of the defendants. We think the record clearly shows that the plaintiff has alleged and shown such interest as to entitle him under Code section 12448 to bring this action. Cooley states: "A discrimination may be attacked by one discriminated against even though the discrimination does not increase his or its tax." 1 The Law of Taxation (4th Ed.), section 367.

IV. Appellees contend that mandamus is not the proper remedy, in that the discretion of the defendants cannot be controlled, and that other plain, speedy and adequate remedy is available to the appellant. Mandamus under the statute (Code section 12440) is available to compel the defendants to perform an act which the law enjoins as a duty of their office. These duties which they have knowingly and deliberately refused to perform are imperative duties. They are commands of the legislature. The defendants have no discretion in the matter, with respect to obeying those commands. Since the statute requires that all property shall be assessed and taxed at its actual value, they have no right to disregard this legislative injunction, because they deem it unwise or inexpedient, or because others in their position in the past have so violated the law. Under the law and the facts they may be compelled by mandamus not only to act, but to so act as to bring about a certain result, that is, the valuation of property at its actual

value. It is true they cannot be coerced in the methods or manner in which they arrive at that valuation, but they can be compelled to use their honest discretion and judgment in attempting to obtain that result. Under the record they have directed the assessors to arbitrarily value property at 60 percent of its actual value, and they have arbitrarily and capriciously assessed property; of a great aggregate value, at percentages of value far below its actual value, with full knowledge that they were so doing. It has been a systematic practice of long standing. There is no question about this principle of law or rule of procedure. In the earliest work on this subject, Tapping on Mandamus, page 66, the author states the principle and cites early English cases to support it, that: "It must, however, be clearly understood, that although there may be a discretionary power, yet if it be exercised with manifest injustice, the Court * * * is not precluded from commanding its *due exercise*; [Italics ours] the jurisdiction, under such circumstances, being clearly established." In Miller v. Hanna, 221 Iowa 56, 62, 265 N. W. 127, this court quotes the principle so well stated in 18 R. C. L. 126, section 39, respecting arbitrary use of discretion, in this language: " 'It is not accurate to say that the writ will not issue to control discretion, for it is well settled that it may issue to correct an abuse of discretion, * * * *or such an evasion of positive duty, as to amount to a virtual refusal to perform the duty enjoined, or to act at all, in contemplation of law;* and in such a case a mandamus would afford a remedy where there was no other adequate remedy provided by law.' " (Italics ours.)

This principle has been announced repeatedly by this court. In Coy v. City of Lyons, 17 Iowa 1, 4, 5, 85 Am. Dec. 539, a writ of mandamus was issued to compel the levy of a tax to pay a judgment against the city. In speaking of the rule that discretion cannot be controlled, the court said:

"But this rule is limited to tribunals having a purely discretionary power in the matter, and cannot be extended to boards or persons upon whom the law has devolved a duty which can only be performed by the exercise of discretion in a certain manner. * * * That duty results from the plain moral, as well as legal, obligation the city is under to pay its debts;

*and no discretion within the limits of the performance of that duty can be rightfully claimed by the city council.* The discretion which they may exercise \* \* \* is not an independent personal discretion, but a legal discretion, *which they must exercise in accordance with their plain legal duty,* or, upon their failure so to do, the courts will, under the common law, as well as the statute, compel such performance." (Italics ours.)

In Valentine v. Independent Sch. Dist., 187 Iowa 555, 569, 174 N. W. 334, 6 A. L. R. 1525, mandamus was sustained to compel the issuance of a diploma, because the board's action was unreasonable and arbitrary and in excess of its powers. Other cases affirming this rule are Cecil v. Toenjes, 210 Iowa 407, 228 N. W. 874; Bernstein v. Marshalltown, 215 Iowa 1168, 248 N. W. 26, 86 A. L. R. 782; Arnold v. Wapello County, 154 Iowa 111, 114, 134 N. W. 546; Boyer v. Mayor of Creston, Iowa, 113 N. W. 474; Madsen v. Town of Oakland, 219 Iowa 216, 222, 257 N. W. 549; Shaw v. City Council of Marshalltown, 131 Iowa 128, 104 N. W. 1121, 10 L. R. A., N. S., 825; Preston v. Board of Education, 124 Iowa 355, 357, 100 N. W. 54; Arthaud v. Griffin, 205 Iowa 141, 145, 217 N. W. 809; Bender v. Iowa City, 222 Iowa 739, 746, 269 N. W. 779.

In other jurisdictions, decisions sustaining this rule that mandamus will lie to correct capricious, arbitrary, unreasonable, and illegal conduct in an officer or official board or tribunal in various circumstances including the refusal to assess property or to assess it at its proper valuation and to levy a tax, are State ex rel. v. Herrald, 36 W. Va. 721, 15 S. E. 974; State v. Buchanan, 24 W. Va. 362, 385; State ex rel. v. Davis (Tax Commission of Ohio), 135 Ohio St. 593, 22 N. E. 2d 81; (in this case action was by relator in behalf of all other taxpayers of Ohio); State ex rel. v. Davis (Tax Commission), 132 Ohio St. 555, 9 N. E. 2d. 684, 685; State ex rel. v. Osborn, 60 Neb. 415, 83 N. W. 357 (to assess property at its fair value); People ex rel. v. Webb, 256 Ill. 364, 100 N. E. 224 (for persistent failure to list personal property of J. Ogden Armour and 65 others for taxation); People v. Commissioners of Cook County, 176 Ill. 576, 52 N. E. 334 (act of the board a clear attempt to evade a positive duty amounting to a virtual refusal to perform its duty). State Board of Equalization v. People, 191

Ill. 528, 61 N. E. 339, 58 L. R. A. 513 (often referred to as the "teachers' case", brought on the relation of two teachers against the state board of equalization and its members to forthwith value and assess *in the manner provided by law* the capital stock and franchises of many utility companies—the relief was granted); United States ex rel. v. Jimmerson, 138 C. C. A. 85, 222 F. 489, L. R. A. 1918B, 1102 (mandamus granted to compel tax officials to raise assessments to full value of property to pay judgment). (In the Jimmerson case petition for writ of certiorari was denied by United States Supreme Court, 239 U. S. 641, 36 S. Ct. 163, 60 L. Ed. 482). State ex rel. v. Bartholomew, 103 Conn. 607, 132 A. 30 (mandamus against board of relief to compel the inclusion of certain property in the assessment list.) The court in that case said, at page 616: "If taxable property omitted in the regular assessment exists, it is the clear duty of the board to list it, and the right to have it listed is a clear right of the other taxpayers of the municipality wherein the property is situate. * * * The writ of mandamus issues when the duty of which enforcement is sought is the performance of a precise definite act in relation to which the respondent has no discretion, when the right of the person applying for it is clear and he is without other adequate remedy."; State v. Erickson (Board of Assessors), 104 Conn. 542, 133 A. 683 (mandamus upheld to compel board to include in the assessment list certain property at its true and actual value.) In this case the court, at page 545, said: "Where a public officer proposes to proceed in plain disregard of the rules of law established for his governance, capriciously or arbitrarily, and not in the honest exercise of discretion or judgment, his conduct is tantamount to a refusal to act at all and mandamus lies, not only to compel him to act *but to direct that action along the prescribed way.*" (Italics ours); State ex rel. v. State Board of Equalizers, 84 Fla. 592, 94 So. 681, 30 A. L. R. 362; Board of Liquidation v. McComb, 92 U. S. 531, 23 L. Ed. 623; Merrill on Mandamus, sections 40, 127, 129; 1 Cooley, Law of Taxation, section 302, Spelling Injunctions and other extraordinary remedies, Vol. 2, 2d Ed., sections 1384, 1517, 1524, 1598; Loewenthal v. People ex rel., 192 Ill. 222, 61 N. E. 462, in which the court, at page 231, said: "Any evasion of a

positive duty by an officer or a legal tribunal, amounting to a virtual refusal to perform the duty, is all that is needed to maintain a writ of mandamus." In speaking of arbitrary assessments, Cooley said, in Volume 3, section 1144 of "The Law of Taxation" (4th Ed.):

"A tax, when assessed by valuation, may be made unequal and oppressive by the unfairness with which the valuation is made. * * * The court cannot sit in judgment upon their [tax officers'] errors, or substitute its own opinion for the conclusions the officers of the law have reached. It is possible, however, that there may be circumstances under which the action of the officers will not be conclusive. Suppose it admitted, or established beyond a peradventure, that a public officer who has been empowered by the law to apportion certain burdens among the citizens, as in his judgment shall be just, has been actuated by a fraudulent purpose, and, *instead of attempting to carry the law into effect, has wholly disregarded its mandate, declined to bring his judgment to bear upon the question submitted to him, and arbitrarily,* with the intent and purpose to defeat the equity at which the law aims, has determined to impose an excessive burden upon a particular citizen. Suppose this to be unquestioned or unquestionable, can it be that a citizen has no remedy against the wrong intended? Such a question, it would seem, could admit of but one answer." [Italics ours.]

In the case before us, not one but many thousands are discriminated against. Of such a case the Supreme Court of the United States, speaking through Justice Miller, in Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903, 904, said:

"Independently of this statute, however, we are of opinion that when a rule or system of valuation is adopted by those whose duty it is to make the assessment, which is designed to operate unequally and to violate a fundamental principle of the Constitution, and when this rule is applied not solely to one individual, but to a large class of individuals or corporations, that equity may properly interfere to restrain the operation of this unconstitutional exercise of power."

There are a great many decisions in which discrimination against a taxpayer, or a class, or large numbers of taxpayers caused them to pay a disproportionate share of the tax burden, either because of the law itself, or because of the arbitrary, systematic and intentional administration of the law. In these cases, because there was no plain, speedy, and adequate remedy at law, relief was granted in equity. In many of these cases relief was granted because the due process or equal protection of the law clauses of the fourteenth amendment were violated. Some of these numerous cases in which the relief was granted, or the principles in question were approved, are as follows:

Pelton v. Bank, 101 U. S. 143, 25 L. Ed. 901; Stanley v. Supervisors, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000, 1004; Board of Supervisors v. Chicago, B. & Q. R. Co., 44 Ill. 229, 238, 239; Railroad & Telephone Cos. v. Board of Equalizers, 85 F. 302; Johnson v. Wells Fargo & Co., 239 U. S. 234, 36 S. Ct. 62, 60 L. Ed. 243; Greene v. L. & I. R. Co., 244 U. S. 499, 37 S. Ct. 673, 61 L. Ed. 1280, Ann. Cas. 1917E, 88; Chicago Great Western Ry. v. Kendall, 266 U. S. 94, 45 S. Ct. 55, 69 L. Ed. 183; Bohler v. Callaway, 267 U. S. 479, 45 S. Ct. 431, 69 L. Ed. 745; Sioux City Bridge Co. v. Dakota County, Neb., 260 U. S. 441, 43 S. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Chicago, B. & Q. R. Co. v Board of Commissioners, 54 Kan. 781, 39 P. 1039; Reagan v. Farmers' L. & T. Co., 154 U. S. 362, 14 S. Ct. 1047, 38 L. Ed. 1014; Nevada-California Power Co. v. Hamilton, 235 F. 317; Prest-O-Lite Co. v. Davis, 215 F. 349 (6 Cir., 131 C. C. A. 491); Lehigh Portland Cement Co. v. Commonwealth, 146 Va. 146, 135 S. E. 669; First Nat. Bk. v. McBride, 20 N. M. 381, 149 P. 353; Iowa-Des Moines Nat. Bk. v. Bennett, 284 U. S. 239, 76 L. Ed. 265; Central R. Co. v. Martin, 65 F. 2d 613, (3 C. C. A.); Lehigh Valley R. Co. v. Martin, 100 F. 2d 139 (3 C. C. A.); City Ry. Co. v. Beard, 283 F. 313; Lion Coal Co. v. Bunten, 280 F. 887; Chicago, R. I. & P. Ry. v. Young, 60 S. D. 291, 244 N. W. 370; Hardin v. Reynolds, Ga., 6 S. E. 2d 328; Ashland County Bank v. Village of Butternut, 208 Wis. 90, 241 N. W. 638, 82 A. L. R. 865; West Penn Power Co. v. Board of Review, 112 W. Va. 442, 164 S E. 862; State ex rel. v. Beamer, 109 Ohio 133, 141 N. E. 851; People ex rel. v. Bridge Co., 287 Ill. 246, 122 N. E. 467; Treadwell Realty Co. v.

Memphis, 173 Tenn. 168, 116 S. W. 2d 997; Bank of Arizona v. Howe, 293 F. 600; Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48, 126 P. 54, Ann. Cas. 1914B, 641; Yakima Valley B. & T. Co. v. Yakima County, 149 Wash. 552, 271 P. 820; Raymond v. Chicago Union Traction Co., 207 U. S. 20, 28 S. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Sunday Lake Iron Co. v. Wakefield Twp., 247 U. S. 350, 38 S. Ct. 495, 62 L. Ed. 1154; Washington Power Co. v. Kootenai County, 270 F. 369, 273 F. 524; Eminence Distillery Co. v. Board of Supervisors, 178 Ky. 811, 200 S. W. 347; Munn v. Des Moines Nat. Bk., 18 F. 2d 269, (8 C. C. A.); Atlanta v Wright, 119 Ga. 207, 45 S. E. 994; Brief in 60 L. R. A. 368; 1 Cooley, The Law of Taxation, section 302.

V.  Has the appellant any plain, speedy and adequate remedy at law, or by statute? Appellees appear to be in much doubt and uncertainty about this. They assert that the "other" remedies are by appeal, injunction, or certiorari. All of these remedies are not available. If appellant could have appealed, that is the procedure which he should have adopted, as any other remedy does not ordinarily then lie. Appellees contend that appellant could have appeared before the local board of review at Marshalltown, and there presented his complaint, and then appealed to the district court if he obtained no relief. Relief was not available to appellant by such procedure. Appellant's complaint is that the property assessed and taxed by the defendants was and is assessed and taxed upon a much lower percentage of its actual value than the percentage of valuation at which his was assessed and taxed. The local assessors in Marshalltown had nothing to do with this. They assessed no such property, and their assessment rolls delivered to the local board of review returned no assessments on such property. The local board made adjustments by raising or lowering the assessments of property on these rolls. The board had nothing to do with adjusting assessments with respect to the property of railway, telephone, public utility, etc., companies and other property assessed by defendants. The appellant was not complaining that his assessment was inequitably higher than his neighbors' assessments. There was no inequality in that respect. He had no grounds for making objections

to the local board, and the local board could not grant him relief on the matters of which he complains in this action. There are no statutory provisions which would have permitted appellant to complain to the county board of review. Neither are there any statutory provisions which would have permitted him to appeal from any property assessment by the tax commission. Appellees have cited a number of authorities on this point, among them Griswold L. & C. Co. v. County of Calhoun, 198 Iowa 1240, 201 N. W. 11; Talbott v. Des Moines, 218 Iowa 1397, 257 N. W. 393; Missouri Valley Co. v. Harrison County, 74 Iowa 283, 37 N. W. 372; Macklot v. Davenport, 17 Iowa 379; Security T. & S. Bank v. Mitts, 220 Iowa 271, 261 N. W. 625. These authorities are not applicable, as they had to do with assessments made by local assessors, and any objections should have been made to the local boards.

Appellees also urge that appellant might have paid his tax and then have had it refunded under Code section 7235. Appellant is complaining not so much because his taxes may have been higher than they should have been, but that the ratio of his tax to the valuation of his property was higher than those who were assessed on a less percentage of valuation. Just what portion of his taxes may have been illegal and therefore refundible would be impossible to calculate.

. Appellees also contend that appellant might have relief by enjoining the collection of his taxes. What we have just said also applies to this contention. Furthermore both mandamus and injunction are equitable remedies (Code section 12442; Briley v. Board of Supervisors, 227 Iowa 55, 287 N. W. 242) and under Code section 12446, and the generally accepted principle of procedure, it is a plain, speedy, and adequate remedy "in the ordinary course of the law" which makes mandamus inapplicable.

Appellees vigorously insist that appellant should have proceeded by certiorari. There would ordinarily be little difficulty in determining when mandamus lies, if there were only less difficulty in determining when certiorari is the proper remedy. The fact that neither remedy may be used to control the discretion of the officer, board or inferior tribunal adds to the difficulty. Under the statute (Code section 12456) the writ may

be granted when authorized by law, and in all cases where an inferior tribunal, board or officer exercising judicial functions is alleged "to have exceeded his proper jurisdiction, or is otherwise acting illegally, and there is no other plain, speedy, and adequate remedy." It differs from mandamus in that the "other" remedy may be other than a remedy at law. The answer to the question as to when the offending one is "acting illegally" is often difficult and seldom satisfactory. While the term is a broad one its meaning has been much narrowed as applied to this section. The question has been before this court many times, and there have been many border line cases. As stated by the court through Justice Evans in Timonds v. Hunter, 169 Iowa 598, 607, 151 N. W. 961, 964: "The line of demarcation between a merely erroneous conclusion and an illegality for which no other adequate remedy is provided cannot be very exactly defined." It is to be regretted that there should be occasion for so much controversy over a matter of procedure. Each side has very ably presented its views.

We do not feel it necessary to pass upon this question, as it is our judgment that even though the conduct of the defendants was such as to be deemed "illegal" within section 12456, certiorari is not the proper remedy. It is well recognized by the decisions and authorities generally that the "other" remedy which supplants mandamus, must be plain, speedy, and adequate. Such is the mandate of Code section 12446.

"If the remedy be not equally convenient and efficacious, the court will grant the writ. * * * So if it be doubtful whether there be another effectual remedy, or the Court does not clearly see its way to one, the writ will be granted." Tapping on Mandamus (American Ed.), pages 70, 71.

"Such other remedy must be speedy. * * * Such other remedy must be adequate. Such remedy is adequate when it reaches the end intended, and actually compels the performance of the duty which has been neglected or refused. It must apply to the case, and afford the particular right to which the party is entitled. Anything which falls short of that is not adequate nor complete. * * * Such other remedy must be specific. A specific remedy is one which will place the party in the posi-

tion he occupied before the act complained of, or would have been had the duty been performed, or will afford relief upon the very subject-matter of the application.'' Merrill on Mandamus, sections 52, 53, 54.

To the same effect, see Volume 1 of ''High's Extraordinary Legal Remedies'' (3d Ed.) sections 17-20. ''The 'other remedy,' the existence of which will oust—or rather prevent the invocation of—jurisdiction by *mandamus,* must be equally convenient, beneficial and effective as *mandamus.* Raisch v. Board of Education, 81 Cal. 542; [Porter Twp.] Overseers v. [Jersey Shore] Overseers, 82 Pa. St. 275. It must be a remedy which will place the relator *in statu quo,* that is, in the same position he would have been had the duty been performed.'' State ex rel. v. Wilson, 123 Ala. 259, 26 So. 482, 45 L. R. A. 772, 777.

In City Railway Co. v. Beard, 283 F. 313, 323, a tax case involving questions analogous to those before us, the court said:

''The adequate remedy at law, which will deprive a court of equity of jurisdiction, must be a remedy as certain, complete, prompt, and efficient to attain the ends of justice as the remedy in equity. * * * [Citing cases.] If the remedy at law be even doubtful, a court of equity will take cognizance of the suit. Davis v. Wakelee, 156 U. S. 680, 688, 15 Sup. Ct. 555, 39 L. Ed. 578; Union Pac. R. R. Co. v. Weld, 247 U. S. 282, 38 Sup. Ct. 510, 62 L. Ed. 1110.''

A full statement of this rule, supported by hundreds of cases from many jurisdictions, may be found in 38 Corpus Juris on mandamus, sections 31 and 32. In the latter section is this language:

''The remedy which will supersede mandamus may be described in general terms as one competent to afford relief upon the very subject matter in question, and which is equally convenient, beneficial, and effectual. Ordinarily the remedy must be such as will enforce the right or compel the performance of the particular duty in question—in effect specific performance * * *. Mandamus may lie where other existing remedies are tedious, * * * or are circuitous.''

See also State ex rel. v. Bartholomew, 103 Conn. 607, 132 A. 30, 35; 2 Spelling on Extraordinary Remedies (2d Ed.);

section 1375; 18 R. C. L., page 132, section 45, page 289, section 217.

In a well considered case involving questions and matters akin to those of this case, in which it was sought to restrain the collection of taxes on shares of bank stock alleged to have been assessed much higher than property generally, the bill was dismissed. This case is Boonville Nat. Bk. v. Schlotzhauer, 317 Mo. 1298, 1306, 298 S. W. 732, 734, 55 A. L. R. 489. In reversing the court said:

"At the threshold lies the question of remedy. Respondents contend that *certiorari* is the sole remedy. Appellants say such remedy is not adequate, in that it only brings up for review the record and that the unjust discrimination can only be shown by matters *dehors* the record of any board of equalization. * * * The facts thus pleaded are the admitted facts of this case. That such facts show a deliberate, unlawful and fraudulent discrimination as between and against plaintiff bank and its shareholders and other property owners in Cooper County (the taxing district in this case) there can be no question. That *certiorari* to the State Board of Equalization or to the County Board of Equalization would be wholly inadequate, there can be no question. The real gist of this case lies in matters entirely *dehors* the record of these boards of equalization. They go back to the assessor of the county, who is an important cog in the wheel of assessment and taxation. He is one of the taxing authorities of the county and state. His acts enter into the legal scheme of assessment of property to be taxed *ad valorem,* and his acts (righteous or fraudulent) enter into the final judgment of assessment."

Mandamus is a coercive remedy. A remedy to compel the performance of a duty commanded by law. Certiorari is a writ of review to determine whether the questioned conduct was legal, or within the jurisdiction of the respondent. Butterfield v. Treichler, 113 Iowa 328, 331, 85 N. W. 19; 38 C. J., page 545, section 11; Riley v. Des Moines, 203 Iowa 1240, 1244, 212 N. W. 716; Madsen v. Town of Oakland, 219 Iowa 216, 257 N. W. 549; Main v. Ring, 219 Iowa 1270, 1273, 260 N. W. 859. Certiorari is not, and was never intended, to be a trial

50

de novo, as on appeal. Such is not the office of the writ. Smith v. Board of Supervisors, 30 Iowa 531, 536; Hatch v. Board of Supervisors, 170 Iowa 82, 152 N. W. 28; Tiedt v. Carstensen, 61 Iowa 334, 16 N. W. 214; McEvoy v. Cooper, 208 Iowa 649, 226 N. W. 13. This court has repeatedly held that the writ presents only a question of law, and does not entitle the petitioner to have the facts reviewed. Dickey v. Civil Service Com., 201 Iowa 1135, 1139, 1140, 205 N. W. 961; Tiedt v. Carstensen, supra; Hatch v. Board, supra; Maxey v. District Court, 182 Iowa 366, 369, 165 N. W. 1005; Wise v. Chaney, 67 Iowa 73, 24 N. W. 599; Ebert v. Short, 199 Iowa 147, 153, 201 N. W. 793; Riley v. Crawford, 181 Iowa 1219, 1222, 165 N. W. 345; Luke v. Civil Service Com., 225 Iowa 189, 192, 193, 279 N. W. 443; Butin v. Civil Service Com., 179 Iowa 1048, 1050, 162 N. W. 565; Smith v. Board, supra; Adams v. Smith, 216 Iowa 1365, 1368, 250 N. W. 466. While under section 12464, the court may hear the parties upon the record, proceedings, and facts as certified, "* * * and such other testimony, oral or written, as either party may introduce," yet this "other testimony" is narrowed and limited to the question of whether the board or other inferior tribunal or officer acted in excess of jurisdiction, or otherwise acted illegally. Hatch v. Board, supra; Tiedt v. Carstensen, supra; Rafferty v. Town Council, 180 Iowa 1391, 1394, 164 N. W. 199; Steeves v. New Market, 225 Iowa 618, 621, 622, 281 N. W. 162; Lerch v. Short, 192 Iowa 576, 577, 185 N. W. 129.

Let us apply these principles of law and rulings to the matter before us. The appellant was granted a hearing before the commission in June 1939. He appeared and made a showing of what he could prove, and requested compliance with his contentions. He was told by the defendants that they knew the laws of taxation and that they did not care to hear from him, and would not then or in the future accede to his requests. During July and August of 1939 the defendants were in continuous session and conducted themselves as alleged in the petition. The matter complained about was not the ordinary single action of the usual respondent, but was involved in the conduct of the enormous business which comes within the duties of the defendants. Certiorari would require the certification of this great

mass of records and proceedings to the district court. It would put an undue burden on the court and greatly disrupt the work of the commission. Under the holdings of this court, the review in certiorari would be greatly limited. The review would be neither speedy, convenient, efficient, nor adequate, and would be exceedingly burdensome, and would not permit of full and proper investigation of the facts pertaining to the matters complained of. The appellant is entitled to have the benefit of a procedure which will permit the court to be informed of the facts without being hedged about with the restrictions of certiorari. He will have this opportunity in mandamus, and will need to bring in only such part of the records as the court may think proper. This will be a much more speedy and effective method than by certiorari, and attended with much less confusion and burden. Furthermore, as stated by the Missouri Court in Boonville Nat. Bank v. Schlotzhauer, supra, it will permit the proof of any relevant and material matters which may be dehors the certified record. As stated by the court in Morrison v. Patterson, 221 Iowa 883, 888, 267 N. W. 704, ''The writ of certiorari performs none of the functions of the writ of mandamus * * *.''

VI. Appellees insist that since under section 6959, the assessment of real estate made in 1937 continues for four years the commission is without power to act until 1941. There is no merit in this contention. The Code section refers only to assessments by the local assessors and does not apply to the commission. We need only to call attention to Code section 6943.026 reciting the powers of the commission, and particularly subsections 1, 9 and 10. The commission is granted general supervision over the administration of the assessment and tax laws, and all taxing bodies, ''to the end that all assessments of property and taxes levied thereon be made relatively just and uniform in substantial compliance with the law.'' In construing their powers, the court, speaking through Justice Stevens in State ex rel. v. Board of Supervisors, 211 Iowa 1116, 1120, 235 N. W. 303, 304, said:

''If the valuation of real property properly fixed in an odd-numbered year by the local board of review of a given township is relatively too high, there would seem to be no reason why the legislature may not authorize any taxing body to reduce such

valuation at any time for the purpose of fixing a new basis upon which to compute taxes for any given year. As stated, the legislature does not, in Chapter 205, in terms, refer to the statute which requires real property to be valued only in odd-numbered years. It does, however, in clear and specific terms authorize the state board of assessment and review to require county boards to meet for that purpose, and to direct them to reduce the valuation of real property in any given township so as to equalize the tax burden within their respective counties. There is no conflict presented at this point. The valuation of real property by the proper taxing authorities in odd-numbered years is distinct and independent of the authority conferred upon the state board of assessment and review to require the valuation for a given township to be reduced at any time for the purpose of equalizing taxes. The purpose for which a state board of assessment and review was created and Chapter 205 enacted, as expressed by the legislature, is that 'all assessments of property and taxes levied thereon be made relatively just and uniform in substantial compliance with law.' Section 17, Paragraph 1. The authority conferred by Paragraph 9, Section 17, Chapter 205, upon the state board of assessment and review, is very broad and comprehensive. It should be stated that we are not in this case dealing with individual assessments, and all questions involving such are reserved.''

If the valuations can be equalized by lowering them, they can be equalized by raising them, also. The fact that taxing bodies may have acted does not prevent the commission from taking such steps as may be necessary to equalize the tax burden. See State ex rel. v. Local Board of Review, 225 Iowa 855, 283 N. W. 87.

■ ■ VII. It is urged by appellees that the petition alleges many conclusions of fact which are not admitted by the motion to dismiss. Of course, for the purpose of the motion, only pleadable facts properly pleaded are admitted by the motion. On a number of these conclusions the appellant has brought himself within the rule stated in Townsend v. Armstrong, 220 Iowa 396, 398, 260 N. W. 17, 18, by pleading the facts. As stated in that case: ''A good pleading consists of the statement of the ultimate facts in the case, and, when so

stated, the pleader has a right to plead his conclusion based upon those facts.'' In other words a conclusion may be pleaded, if it is supported by pleaded facts. It is true that appellant has pleaded that certain conduct of the defendants was "fraud- ulently" done. It is apparent that the appellant had in mind not actual fraud, but only constructive fraud. It is not neces- sary that he allege or establish actual fraud. The rule has been stated by Jaggard in his work on ''The Law of Taxation'', pages 502, 503, thus:

"Courts have not been more clear or consistent in origin- ally determining what is a fraudulent assessment than they have been coherent in finally adjudging the effect of fraud on the enforcement of the tax. But the general accepted formula is that 'by a fraudulent assessment is meant an assessment that is purposely made too high, with a view of casting an undue proportion of the public burdens on a certain taxpayer, or an assessment made in pursuance of a rule of valuation adopted by the assessor that is designed to operate unequally in the distribution of taxation.' [Citing cases.] It is undoubtedly the law that inequalities in valuation fixed by design, * * * so that the exercise of proper judgment has been departed from render the assessment void.''

Of such an assessment the supreme court of Washington said:

"Such an arbitrary policy is vicious in principle, violative of the Constitution, and operates as a constructive fraud upon the rights of the property holder discriminated against. In such cases equity will grant relief.'' Spokane & Eastern Trust Co. v. Spokane County, 70 Wash. 48, 52, 126 P. 54, Ann. Cas. 1914B, 641.

With respect to a like situation the Eighth Circuit Court of Appeals in United States ex rel. v. Jimmerson, 222 F. 489, 496, L. R. A. 1918B, 1102, 1107, said:

"It is not material whether their acts are committed with intent to defraud the relator or not. The defendants have no discretion under the law as to the valuation they shall put upon property for taxation. Of course, they may exercise their

judgment in determining what the true value of property is, and this court cannot interfere with the exercise of that judgment; but it can, and ought to, compel them to act in accordance with the undisputed law of Arkansas. There is no claim here that defendants in error have or intend to assess property at its true value.''

In the brief following the report of the above mentioned case in L. R. A. 1918B, 1107, the commentator states:

''Where it is the clear legal duty of the assessor to assess property at its full value, there would seem to be no doubt that the court would compel him to do so by mandamus, leaving him free to exercise his judgment as to what the full value is.''

VIII. Appellees contend that the granting of the relief prayed for will result in greater inequality. It is not obvious to the court just how this result could follow. We have already expressed our opinion to the contrary in Board of Trustees v. County Board, 215 Iowa 876, 878, 244 N. W. 855, as the following excerpts indicate:

'' 'The one paramount object which the law seeks to insure in distributing the burdens of taxation is equality, and this is the chief end to be gained by insisting that all property shall be *assessed at its actual value.*' (Italics are ours.) Hawkeye Portland Cement Co. v. Board of Review, 205 Iowa 161 (local citation 165).

'' 'Under the present taxation laws, the theory is that all property shall be *assessed at actual value.*' (Italics are ours.) Chapman Bros. v. Board of Review, 209 Iowa 304 (local citation 309).

''Manifestly, then, according to the statute, there is but one way to value property for taxation purposes, and that is in accordance with its *actual value.* Section 7109, above quoted, has not been repealed or modified by Chapter 329-C2 of the 1931 Code.

'' 'The purpose for which a state board of assessment and review was created * * *, as expressed by the legislature, is that ''all assessments of property and taxes levied thereon be made relatively just and uniform in substantial compliance

with law." ' State ex rel. Iowa State Board of Assessment and Review v. Board of Supervisors, 211 Iowa 1116 (local citation 1120).

"The aim of the legislature in creating the State Board of Assessment and Review was to accomplish uniformity, equality, and justice. There is no basis in the law to say that the legislature intended to bestow upon the State Board the power to invalidate existing statutes relating to the methods of valuing property for assessment purposes. At all times section 7109, above quoted, remains the basis for valuing property that is to be assessed. Each assessor must recognize that statutory basis because it is his statutory duty so to do. No one, then, until the legislature so declares, can change that duty imposed upon the assessor."

Appellees rely upon the decision in Pierce v. Executive Council, 165 Iowa 465, 146 N. W. 85. The changes in the fact situation and in legislation make the holding of the court therein of little application.

IX. It is maintained by the appellees that what has been done by the defendants cannot be undone. We are not by this decision attempting or intending to undo what has been done, in the manner complained of in the petition, respecting assessments which have been made, or taxes which have been collected in the past. Timely demand was made upon the appellees in the year 1939, and the demand was refused not only as to that year but as to any future year. These facts were properly pleaded and appellees by their motion to dismiss conceded the truth of the matters alleged. By our decision we are merely holding that the motion to dismiss should have been overruled. The judgment dismissing plaintiff's action is hereby reversed and the case is remanded to the district court for such further disposition, not inconsistent herewith, as the action of the parties may properly require. Any relief which that court may grant must depend upon the record then made and the facts and conditions as they then exist.—Reversed and remanded.

RICHARDS, C. J., and STIGER, MILLER, SAGER, and HALE, JJ., concur.