N. C. MADSEN, Appellee, v. TOWN OF OAKLAND et al., Appellants.

No. 42410.

DECEMBER 11, 1934.

REHEARING DENIED APRIL 5, 1935.

Charles Roe and L. M. Hall, for appellants.

John J. Hess, for appellee.

STEVENS, J.—This original action is prosecuted upon the theory that the appellant town council of the incorporated town of Oakland, in denying the application of appellee for a permit to sell beer, abused its lawful discretion. This is the only question presented for decision.

The authority to grant applications for the issuance of class "B" permits to sell beer is granted to cities and towns and cities acting under special charter. Section 11, chapter 37, Laws of the 45th General Assembly. Class "B" permits shall be issued to any person who

"1. Submits a written application for a permit, which application shall state under oath:

"a. The name and place of residence of the applicant, and the length of time he has lived at such place of residence.

"b. That he is a citizen of the state of Iowa.

"c. The place of birth of the applicant, and if the applicant is a naturalized citizen, the time and place of such naturalization.

"d. The location of the place or building where the applicant intends to operate.

"e. The name of the owner of the building and if such owner is not the applicant that such applicant is the actual lessee of the premises."

And also:

"2. Establishes:

"a. That he is a person of good moral character.

"b. That the place or building where he intends to operate conforms to all laws, health and fire regulations applicable thereto, and is a safe and proper place or building.

"3. Furnishes a bond in the form prescribed and to be furnished by the treasurer of state or the state of Iowa, with good and sufficient sureties to be approved by the council of the city or town to which application is submitted, conditioned upon the faithful observance of this act, in the sum of two thousand dollars ($2,000.00)."

The application of appellee to the appellant town council in form complied with the foregoing specific requirements. The application was accompanied by a certificate of good moral character and repute signed by three resident citizens. In addition to the foregoing, it is provided by section 8 of the aforementioned act that "permits hereunder defined shall be issued only to persons who are citizens of the state of Iowa, who are of good moral character and repute. * * * *"

It is further enacted by section 27 of said act that

"The authorities empowered by this act to issue permits shall make a thorough investigation to determine the fitness of the applicant and the truth of the statements made in and accompanying the application. * * * *"

No proof, other than the application and the certificates accompanying the same, was offered before the appellee town council. The application was rejected by the council upon the ground that appellee was deemed not to be a person of good moral character and repute within the scope, meaning, and purpose of the act. That in passing upon such application, the council exercises a legal discretion is conceded by appellee. It is, as stated, however, contended in his behalf that in the present instance there was such an abuse of the discretion confided in the town council as to require an order by the district court for the issuance of a writ of mandamus to compel the said council to grant the permit sought.

It will be observed that the applicant for a class "B" permit to sell beer must, in addition to the filing of a formal permit, es-tablish that he is a person of good moral character. The burden of establishing such good moral character rests upon the applicant. This is recognized by appellee who contends that the certificate of good moral character accompanying the application was sufficient and fully met the statutory requirement. At least that it made a prima facie case.

In addition to the burden imposed by the act upon an applicant for a class "B" permit, a corresponding duty is imposed upon the

body authorized to grant the same. The duty thus imposed to make a thorough investigation to determine the fitness of the applicant to be the holder of a permit is imperative. This duty was apparently performed by the appellant town council. The record, however, does not in any way disclose the precise facts ascertained and determined as the result of the investigation undertaken. This, if material, must be implied from the conclusion reached as to the fitness of appellee to hold a permit.

The evidence upon the trial of this case in the district court is in conflict and tended on the one side to show that the moral character of appellee as to honesty, integrity, and general moral character was good. One of the witnesses so testifying admitted on cross-examination that he had heard that appellee's place of business in which he conducted a hamburger stand had been raided for supposed liquor violations, and that boys were taken out of, or came to, appellee's place in an intoxicated condition. Another character witness for appellee gave similar testimony and that he had seen intoxicated persons about appellee's place of business. Others of said witnesses limited their testimony to the general reputation of appellee for honesty and integrity in his business dealings. On the other hand, there was testimony tending to show that minors loitered about appellee's place of business while intoxicated; that intoxicated persons were seen leaving the place; that the patrons thereof were, to some extent, booze-fighters; that intoxicated persons had been seen leaving the place late at night; that pop was spiked in the hamburger place in the presence, and with the knowledge, of appellee; that he told Bertha Jensen, an employee who testified that liquor was kept in the place, to empty the contents in the sink if the law came in; that a fifteen-year-old boy became so intoxicated therein that he "passed out"; that she saw appellee intoxicated; and other testimony of like character.

All of the foregoing testimony was denied by appellee. Asked on cross-examination if he ever became intoxicated, appellee answered, "Not when I was in the place of business". Various members of the town council called as witnesses by defendants stated, in substance, that the general reputation of appellee for good moral character was good.

Much emphasis is placed by appellee upon the testimony of the members of the town council. It is urged in this connection that this testimony is in itself sufficient to establish such an abuse

of discretion on the part of the town council as to entitle appellee to the writ sought. The duty imposed by the act upon town councils to make a thorough investigation of the fitness of an applicant for a permit to sell beer is not a perfunctory one, nor is it to be performed in the light of, or with reference to, the personal knowledge or opinions of the members of the council. Except as it may tend, if it does at all, to throw light upon the fitness of appellee, this testimony amounts to no more than the testimony of any other witness. The town council, acting within the authority conferred thereon to issue permits, could not, if informed thereof, ignore the facts in the possession of the town's night watchman who gave testimony upon the trial of this case as follows:

"I live in Oakland. I am the nightwatch there. I arrested the two boys some time in April of this year who were drunk in Madsen's place. I had seen the boys in Madsen's place off and on during the entire evening. They were getting more intoxicated all the time. I saw Madsen there in the shop a part of the time. I saw the boys on the back of the lot on which Madsen's place is located. They were not as intoxicated then as they were later. I did not spend all my time watching the boys that evening. When I arrested the two boys one of them was lying on the walk. I did not see Madsen then. The general reputation of Madsen's place is bad. I was present when the slot machine was taken from Madsen's barbecue. It was a quarter machine. You played quarters into it and sometimes it played out quarters. After it was taken I turned it over to the sheriff."

There is, perhaps, no perfectly accurate or comprehensive definition of moral character. The term must be interpreted in the light of the purpose to be served. The legislature sought, by the enactment of chapter 37, Laws of the 45th General Assembly, to authorize certain persons to sell beer containing not more than 3.2 per cent alcohol under stringent limitations and regulations. This is inherent in the very terms and purpose of the act. The officers empowered to issue permits are, in effect, forbidden to act in a mere formal manner. Imperative duties are imposed thereon. It is not the province of courts to give a more liberal construction to laws of the character involved than is clearly and obviously intended by the legislature. As was said by the supreme court of

Arkansas in Whissen v. Furth, 73 Ark. 366, 84 S. W. 500, 501, 68 L. R. A. 161:

"He [the applicant] has no natural right to a license to sell liquor. This right can only be acquired by coming within all the provisions of the statute, and one of these provisions is that he must be a person of good moral character."

Proceeding further, the court, quoting from an earlier decision, said:

"The object of this limitation (to persons of good moral character), in part, evidently was to aid in the prevention or suppression of the crimes and vices which are sometimes associated with or grow out of the sale of liquor. The enforcement of laws doubtless could be materially aided in the way of suppressing gaming and violations of the Sabbath and other vices by granting licenses exclusively to such persons."

As bearing upon the question of the good moral character of an applicant, it is always proper to show the nature and character of the business in which he has been engaged; the manner in which it was conducted; his habits and customs as to the observance or violation of the law. Whissen v. Furth, supra; Leister's Appeal, 11 A. 387, 7 Sad. (Pa.) 509; Hardesty v. Hine, 135 Ind. 72, 34 N. E. 701; Weiman v. Mabie, 45 Mich. 484, 8 N. W. 71, 40 Am. Rep. 477; In re O——, 73 Wis. 602, 42 N. W. 221; U. S. v. Leles (D. C.) 236 F. 784.

In addition to the requirement of good moral character, the act in question requires that the applicant be of good repute. The reasons prompting such requirement, when the nature of the business is considered, is obvious. The word "repute," as used in the statute, is significant and has a distinct meaning. Morse v. Brown (D. C.) 206 F. 232; Lowell Hardware Co. v. May, 59 Colo. 475, 149 P. 831; State v. Wis. State Board of Med. Examiners, 172 Wis. 317, 177 N. W. 910.

Let us, in the light of the law as set forth above, consider briefly the scope and relief permissible in an original action for a writ of mandamus. Section 12440 of the Code of 1931, defining mandamus, is as follows:

"The action of mandamus is one brought to obtain an order commanding an inferior tribunal, board, corporation, or person

to do or not to do an act, the performance or omission of which the law enjoins as a duty resulting from an office, trust, or station."

Admittedly, it does not lie to control or review the discretion of an inferior tribunal or board. Frequently courts in discussing the subject of discretion in certiorari cases have overlooked the distinction between that form of remedy and mandamus. Mandamus is an original action to compel an unperformed ministerial duty, whereas certiorari is an action to review and to determine the legality of an official or judicial act. 11 C. J. 90.

It is true that an action in mandamus may, under some circumstances, provide a remedy against a clear abuse by an inferior board or tribunal of its discretion. Harwood v. Quinby, 44. Iowa 385. This rule is quite universally recognized by the courts of this country. Its application is, however, narrowly limited. The question has been quite fully considered by this court in the following cases: Ford Hopkins Co. v. City of Iowa City, 216 Iowa 1286, 248 N. W. 668; Bernstein v. City of Marshalltown, 215 Iowa 1168, 248 N. W. 26, and also in State ex rel. Fletcher v. District Court, 213 Iowa 822, 238 N. W. 290, 80 A. L. R. 339, which was a proceeding in certiorari. See, also, Burr v. Voorhis, 229 N. Y. 382, 128 N. E. 220; Consolidated Home Supply Ditch & Reservoir Co. v. Town of Evans, 59 Colo. 482, 149 P. 834; People v. Brady, 268 Ill. 192, 108 N. E. 1009.

It was said by the supreme court of Illinois in the last-cited case that:

"He may not arbitrarily withhold the certificate, alleging such a reason where it does not, in fact, exist. Such a withholding would be an act of the will, only, and not of the judgment, and would be such a palpable abuse of discretion as could be controlled by mandamus."

An original action in mandamus does not lie to review discretion when its exercise depends upon facts to be determined and ascertained by the officer charged with a statutory duty. Scripture v. Burns, 59 Iowa 70, 12 N. W. 760; Monter v. Board of Supervisors, 187 Iowa 625, 174 N. W. 407.

We have already pointed out the duty imposed by law upon the appellant town council. It was its duty to determine the moral character of appellee, his general reputation, and his fitness to have a permit for the sale of beer. The duty imposed too clearly requires

the council to ascertain and pass upon questions of fact to call for demonstration. Such duty, not only exists under the statute, but it is imperative. The board performed its duty, apparently in good faith. Indeed, there is no claim of fraud or favoritism asserted in the record. There is nothing tending to show that appellants were unfriendly to, or in any way prejudiced against, appellee. On the contrary, they entertained a much more favorable opinion of his moral character and repute than the testimony introduced upon the trial of this case would seem to justify. If appellants abused the discretion confided to them in this case, then the statute imposing the burden upon an applicant for a permit to sell beer to establish his good moral character is without meaning, purpose, or force. The question cannot be turned upon the personal views of appellants. They were bound to give heed to the facts which they were required to ascertain and determine. The order of the district court commanding appellants to issue a class B permit to appellee to sell beer cannot, for the reasons stated, be sustained.

It is, accordingly, reversed.

MITCHELL, C. J., and KINTZINGER, DONEGAN, ALBERT, and ANDERSON, JJ., concur.