H. V. CURTIS, Appellee, v. HARL DEGOOD, Mayor, et al., Appellants.

No. 46998.

OCTOBER 14, 1947.

Ralph H. Munro, of Fairfield, for appellants.

Jones & White and W. E. Dullard, all of Ottumwa, for appellee.

MANTZ, J.—H. V. Curtis, plaintiff herein, a resident of Richland, Keokuk County, Iowa, was the holder of a Class B beer permit in the City of Batavia, for the year ending June 30, 1946. He had held like permits for a number of years. About a month prior to the termination of said beer permit, plaintiff took steps to have the same renewed, and caused to be presented to the city council of Batavia a paper purporting to be an application for a renewal of said permit. This application was presented to the city council by Frank Howard, who was in charge of the establishment where the permit was used. The council denied such request. Plaintiff thereupon brought this action, alleging in substance that under the showing he was entitled to have a permit issued and that the city council, in refusing such permit, acted arbitrarily, illegally, and in violation of his rights. The defendants affirmatively denied plaintiff's allegations; alleged that the plaintiff had failed to comply

with the law in presenting a proper application; that he had not shown himself entitled to receive such permit, and that the council of Batavia, Iowa, in refusing to issue said permit acted in a legal manner and within its rights. The trial court found for the plaintiff, holding that the city council acted illegally and arbitrarily and in violation of plaintiff's rights and ordered said council to forthwith issue plaintiff a Class B beer permit as provided by law. Following the submission of the case, and within the statutory time, defendants moved the court for a new trial, setting forth that they had available newly discovered evidence relevant and material to a proper decision of the case. This motion was overruled. This appeal followed.

The plaintiff-appellee in pleading set forth the various grounds relied upon to obtain the relief sought and asked that the court issue a peremptory writ of mandamus directed to the appellants commanding the issuance forthwith of a Class B permit in favor of appellee. On July 20, 1946, during the progress of the trial, and evidently upon the suggestion of the trial court, appellee filed an amendment to his petition, reciting that the amendment was filed pursuant to Rule 107, Iowa Rules of Civil Procedure, and in said amendment asked relief by certiorari. Later, by answer the appellants denied that appellee came within the provisions of Rule 107 and asserted that appellee was entitled to no relief, either by mandamus or certiorari.

Whether appellee's remedy is properly by mandamus or by certiorari is not directly argued in this appeal and we will assume for the purposes of this case that the procedure ordered and taken was proper. However, we desire to call attention to the holding of this court in the case of Madsen v. Town of Oakland, 219 Iowa 216, 257 N. W. 549.

In pleading, evidence, and argument, appellants contend that the beer permit, while purportedly asked for by the appellee, H. V. Curtis, in truth and in fact was being sought for the use and benefit of Frank Howard, a nephew of appellee, and that said Howard was ineligible to receive same.; that he was morally unfit to operate thereunder, and also, was ineligible in that prior thereto he had been convicted of a crime. They contend that Frank Howard was the real applicant.

The trial court ignored such claim, holding that the inquiry must relate solely to the qualifications of appellee, H. V. Curtis.

As we understand the record, one of the principal questions in the case is whether or not appellee, H. V. Curtis, made a legal and proper application to the city council of Batavia, Iowa, for a Class B beer permit within the provisions of chapter 124 of the Code of Iowa, 1946, and if so, did said council arbitrarily exceed its powers in failing, neglecting, and refusing to issue to him such permit. If the application did not comply with the statute, the appellee cannot prevail.

Incidentally, and in connection therewith, there is made and argued the claim that the court erred in ordering the said city council to forthwith issue such permit. It is also argued that the court erred in denying appellants a new trial.

Inasmuch as the last two matters above set forth are involved in and directly connected with the first matter above set forth, we will consider them together.

In order to have a better understanding of the issues in the case, we think it will be helpful to set out some additional facts shown by the record.

I. The applicant, H. V. Curtis, did not live in Batavia and had never lived there. However, for some years he had held a Class B beer permit authorizing him to sell beer in said city. His establishment there was operated by a manager or agent. When the case was tried he held a like permit in the city of Fairfield, Jefferson County, Iowa. He resided in Richland, Keokuk County, Iowa. At the time the case was tried Curtis was a mechanic and contractor in Richland, Iowa, and it clearly appears from the record that he spent very little time at the Batavia establishment, leaving its control and management to others.

During much of the time appellee held a beer permit in Batavia the establishment was operated by Frank Howard, a nephew of appellee. Appellee referred to him as his manager. As a witness Curtis testified that Frank Howard had managed the place for a number of years but that ''Mrs. Frank Howard is going to be the manager from now on.'' That said Howard, prior thereto, had been convicted of two felonies in Jefferson

County, Iowa, stands uncontradicted. These convictions were in 1926. He was committed to the Men's Reformatory at Anamosa, Iowa, from which place he was paroled and discharged.

While the evidence is in conflict, there is in the record evidence that during the time Frank Howard was operating the Batavia establishment, under the beer permit of appellee, liquor had been consumed there, persons had been there in an intoxicated condition, and complaints had come to the city council that a slot machine had been operated there.

Prior to the enactment of chapter 37, Acts of the Forty-fifth General Assembly of Iowa, it was unlawful to manufacture or keep for sale beer within the state of Iowa. The law upon that subject is now found in chapter 124, Code of Iowa, 1946. While some changes have been made in that enactment, still the essential parts thereof remain unchanged. Such act authorizes the sale of beer in cities and towns under certain conditions and restrictions. Code section 124.1 provides:

"Permit required. It shall be unlawful for any person to manufacture for sale or sell beer unless a permit is first obtained as provided for in this chapter."

Code section 124.2(8) provides:

" 'Application' shall mean a formal written request for the issuance of a permit supported by a verified statement of facts."

Appellee by pleading states that on June 3, 1946, he made proper and legal application to the mayor and city council of Batavia, Iowa, for the issuance of a Class B permit as provided by law.

Code section 124.9 provides:

"Class 'B' application. Except as otherwise provided in this chapter a class 'B' permit shall be issued by the authority so empowered in this chapter to any person who:

"1. Submits a written application for a permit, which application shall state under oath:

"a. The name and place of residence of the applicant, and the length of time he has lived at such place of residence.

"b. That he is a citizen of the state of Iowa.

"c. The place of birth of the applicant, and if the applicant is a naturalized citizen, the time and place of such naturalization.

"d. The location of the place or building where the applicant intends to operate.

"e. The name of the owner of the building and if such owner is not the applicant, that such applicant is the actual lessee of the premises.

"f. That the place of business for which the permit is sought is and will continue to be equipped with sufficient tables and seats to accommodate twenty-five persons at one time, and is located within a business district or an area now or hereafter zoned as a business district.

"2. Establishes:

"a. That he is a person of good moral character.

"b. That the place or building where he intends to operate conforms to all laws, health and fire regulations applicable thereto, and is a safe and proper place or building.

"3. Furnishes a bond * * *."

It will be noted that the provisions of the law give a general definition of the term "application" as used in the chapter. Later there is set forth definitely and specifically what must appear in or be shown by an application for a Class B permit.

It is the claim of appellants that appellee's application did not comply with the statute as to form. The trial court evidently recognized that the application was deficient but took the position that the council, having considered the application sufficient and having acted thereon, had waived the defect. We quote a part of the language of the court in passing upon such matter:

"Since the council considered the application sufficient, and under the well known rule that where a matter is tried on a certain theory or heard on a certain theory in a lower tribunal, that the same theory will not be disturbed on appeal. I think this Court is duty bound to consider that the council had before it this application and that it was a sufficient application to comply with the statute."

Appellee in trial below did not plead that the city council had waived any defect in the application presented to them.

In view of the fact that the finding and decree of the trial court is to be reversed upon another issue raised in the case, we find it unnecessary to pass upon appellants' claim that the application filed by appellee did not comply with the statute.

II. Appellants contended below and also in this court that the real applicant for the beer permit was not H. V. Curtis but was Frank Howard, who had operated the beer establishment for a number of years; that said Frank Howard was in active charge thereof and was the one who made the application for a renewal. The council claims that said Frank Howard, by reason of his felonious record, was not a person of good moral character and was therefore ineligible to secure the Class B permit and used the device of having his uncle, H. V. Curtis, make the necessary application. The trial court denied this claim of appellants and held that the record showed that H. V. Curtis was a person of good character. This holding was doubtless based upon the certificate of J. T. Schultz attesting to the good character of such applicant.

The statutes do not expressly provide that the holder of a Class B permit shall reside in the town or city where such permit may be used or have direct and active charge of the business being operated thereunder. They provide among other things that the applicant must be a resident of the state. However, the requirement that he be a person of good moral character doubtless contemplated that the permit holder would be in charge of the business of dispensing the beverage. It would hardly seem logical for the legislature to require a permit holder to be a person of good moral character and at the same time permit him to put in active charge of such business one who, under the record, did not possess a good moral character. It would seem unreasonable that the legislature would contemplate such a situation, especially in view of the fact that in legislating they were making it lawful to make and sell a product the manufacture and sale of which, prior to that time, were unlawful. Necessarily, the permission given was to be strictly con-

strued. A person devoid of good moral character might seek to operate a beer-selling establishment and put forth his wife, or some member of the family, or relative as the applicant. The wife, the member of the family, or the relative might possess a good moral character, yet the actual operator might be ineligible.

The appellants, in considering the application of H. V. Curtis, could properly consider not only the moral character and repute of applicant for a beer permit but that of the persons who operated the beer establishment and the manner in which said establishment had been conducted prior to the time the new permit was to take effect. Section 124.6 of the Code of 1946 uses the term to be applied to applicant as being a person of "good moral character and repute." Under said section no permit can be issued to any applicant unless it shall appear that such applicant is a person of good moral character and repute.

Code section 124.8(2a) provides that an applicant for a beer permit must establish that he is a person of good moral character. It is quite evident from the statute that the legislature in limiting the issuance of a beer permit to a person of "good moral character and repute" no doubt had in mind the character of the applicant and the manner in which his establishment had been conducted. Madsen v. Town of Oakland, supra, 219 Iowa 216, 221, 257 N. W. 549, 551, 552. In that case we said:

"As bearing upon the question of the good moral character of an applicant, it is always proper to show the nature and character of the business in which he has been engaged; the manner in which it was conducted."

Further therein we said:

"In addition to the requirement of good moral character, the act in question requires that the applicant be of good repute. The reasons prompting such requirement, when the nature of the business is considered, are obvious. The word 'repute,' as used in the statute, is significant and has a distinct meaning." (Citing cases.)

Under the statute the applicant has the burden of establishing that he is a person of good moral character. At the same time there rests upon the city council the imperative duty of investigating the good moral character and repute of applicant before granting a permit. In arriving at a determination of granting or denying an application for a beer permit the council would have a right to consider how the establishment had been operated; any complaints made of violations of the statute in such operation; its general repute and the character and record of those who managed or had charge thereof; and any other fact or circumstance coming to their attention as to the general situation concerning the operation of the business under the permit sought or held.

The record in this case shows that on various occasions the attention of the members of the city council had been called to the manner in which the beer tavern had been operated. The criminal record of Howard was known to the city council. They knew that he had been actively in charge of the business for several years; that he was a relative of applicant and was financially interested in the business; that complaints had been made that liquor had been consumed on the premises; that minors and intoxicated persons had frequented the place; and that complaints had been made that gambling machines had been operated there.

Taking into consideration the nature of the business to be carried on, it seems to us that a city council, in considering an application such as is here involved, might properly consider the relationship then and there existing between applicant and the operator acting under such permit.

 We think that a city council, acting as a governmental agency, might properly refuse to issue a permit, if, in their judgment, the evidence did not warrant it. We do not think that they acted arbitrarily and in disregard of appellee's rights in denying the application. It was a matter for them to decide and we cannot say that they abused their power or authority in so deciding.

Some other matters relating to the action of the court in striking parts of certain pleadings and the refusal to grant

a new trial have been argued. In view of our conclusion herein, as above set forth, we find it unnecessary to pass upon such matters. The judgment of the trial court is reversed; all costs are taxed to appellee.—Reversed and remanded.

OLIVER, C. J., and BLISS, GARFIELD, HALE, SMITH, MULRONEY, and HAYS, JJ., concur.