THELMA EITTREIM, appellee, v. STATE BEER PERMIT BOARD, appellant, Ray Johnson, Melvin D. Synhorst and Chet B. Akers, members.

No. 48056.

(Reported in 53 N.W.2d 893)

JUNE 10, 1952.

REHEARING DENIED SEPTEMBER 19, 1952.

Robert L. Larson, Attorney General, Glenn L. Gray, Assistant Attorney General, and Clyde E. Herring, County Attorney, for appellant.

R. E. Hanke, of Des Moines, for appellee.

WENNERSTRUM, J.—Plaintiff sought a writ of mandamus in her favor and against the defendant and thereby endeavored to have the district court direct the defendant-board to issue to her a state beer permit. The defendant filed a motion to dismiss the

petition on the grounds that there was no mandatory duty imposed upon it by law to issue such a permit as referred to in plaintiff's petition and for the further reason that the district court did not have jurisdiction in a mandamus proceeding to order the defendant to issue a permit to the petitioner. The trial court overruled this motion. The defendant has appealed to this court prior to the determination of the hearing of the case on its merits, consent to do so having been obtained from it. Rule 332, R. C. P.

The appellee's petition alleged that during the year 1950 she held a class "B" permit granted to her by the town of Bevington and also a permit granted by the State of Iowa, section 124.5, 1950 Code; that before the expiration of the time covered by the 1950 beer permit the appellee made application for its renewal for the subsequent year; that it was granted by the town of Bevington and issued to her for the subsequent year and it has never been revoked. It is further alleged in the petition that pursuant to chapter 124 of the 1950 Code and subsequent to the granting of the permit and license by the local board, notice of the granting and issuance of this permit was given this appellant-board (section 124.5, 1950 Code) and that it, acting through its members, has failed to issue a state beer permit in violation of the statute. By reason of this claimed illegal and unlawful failure of the State Beer Permit Board to issue the state beer permit to the appellee it is alleged that she has been forced to close her place of business and to suffer loss of profits and irreparable injury. It is further alleged that this appellee has no other speedy, adequate remedy at law other than by virtue of this mandamus action.

Appellant by its motion to dismiss admits the truth of the allegations in appellee's petition which are well pleaded. Crowley v. Johnson County, 234 Iowa 142, 12 N.W.2d 244.

The appellant-board in this court sets out as grounds for reversal several propositions of law which may be summarized as follows: there is no mandatory duty imposed upon the State Beer Permit Board to issue a beer license upon the granting of a local license by a city council; the law provides for uniform compliance and creates the State Beer Permit Board for that

purpose; the law requires approval by both issuing bodies; section 124.23, 1950 Code makes it a duty upon all issuing authorities to investigate said application; the appellee's petition is based solely upon the question of a mandatory duty and there is no allegation in the petition claiming that the State Beer Permit Board acted arbitrarily or capriciously; the State Beer Permit Board has the power to review and the power of revocation and that under the law of this state as expressed through the opinions of this court the right of revocation is coextensive with the right of denial; the statutes included for public benefit are to be taken and construed most favorably to the public.

The questions presented by reason of this appeal involve the interpretation and application of certain provisions of the statute which, of necessity, must be set out in this opinion. This is particularly true by reason of the provision of a portion of section 124.5, 1950 Code, upon which the lower court apparently based its decision and which portion of the Code section the appellee now states is controlling. This portion of the statute will be incorporated hereinafter in its proper context and commented upon.

Section 124.1, 1950 Code makes it unlawful for any person to "* * * sell beer unless a permit is first obtained as provided for in this chapter."

Section 124.4 is as follows: "Duties and powers. The state permit board may review the action of any city or town council, including special charter cities, and boards of supervisors, in any case where a hearing has been had relative to the cancellation or revocation of a permit and it appears from the records of the hearing held by said city or town council or board of supervisors, that the permit has not been revoked or canceled, and it appears from an investigation made by the state permit board that there is reasonable ground to believe that such permit holder has been guilty of violation of the provisions of this chapter, and upon such hearing the permit board shall make a finding, after hearing the facts with reference to the grounds for the revocation of such permit, and by a majority vote shall determine whether or not such permit shall be revoked and make an order accordingly, and said finding shall be final.

"If the state permit board finds from investigation that a review of the action of any city or town council, including special charter cities and boards of supervisors, should be had, or that such governing bodies have failed to take action, the state permit board shall thereupon fix a date for the hearing thereof and shall notify the permit holder of such hearing by registered mail of the date fixed for hearing and the date set for the hearing shall not be less than seven days from the mailing of the notice. Such notice shall be mailed to the permittee at the post-office address where his place of business is conducted under his permit. All such hearings shall be held at the seat of government, at Des Moines.

"\* \* \*

"Like hearings may also be had in cases where a verified petition signed by at least ten taxpayers has first been presented to the city or town council, including special charter cities or the boards of supervisors, as the case may be, or where the state permit board from its investigation asks that a hearing be had on the revocation of a permit, and in the event the city or town council, including special charter cities and boards of supervisors, neglects or refuses to have such hearing, the matter may be presented to the state permit board upon such verified petition in writing, signed by at least ten taxpayers of the jurisdiction for which the permit was granted, or the state permit board may upon its own motion conduct such hearing, and the same procedure as in this section provided shall apply with reference to notice of hearing witnesses, testimony and contempt proceedings for failure to appear, and the board shall make a finding in such cases, which finding shall be binding on the permit holder and also on the city or town councils, including special charter cities or boards of supervisors, as the case may be."

Section 124.5 is as follows: "Power to issue permits. Power is hereby granted to the state tax commission to issue the class 'A' permit, provided for in this chapter, and to revoke the same for causes herein stated. Power is hereby granted to cities and towns, including cities under special charter to issue the class 'B' permits and class 'C' permits within their respective limits and to revoke same for the causes herein stated, or in the event

the place of business of the permit holder is conducted in a disorderly manner. Power is hereby granted to boards of supervisors to issue, at their discretion, class 'B' and 'C' permits in their respective counties in villages platted prior to January 1, 1934, and to clubs as defined in section 124.16 and to revoke same for causes herein provided, or in the event the place of business of the permit holder is conducted in a disorderly manner.

"Each applicant applying for a class 'B' or 'C' permit, shall, in addition to procuring a permit from a city or town council, or board of supervisors, as provided in this chapter, also make application through such city or town council or board of supervisors for a state permit from the state permit board. Such applicant shall deposit with said application a fee of three dollars which shall be forwarded to the state permit board, together with the certification to the state board of the issuance of such class 'B' or 'C' permit. Such fees collected shall be placed in a special fund by the state tax commission to be used by the state permit board for the purpose of enforcing the provisions of this chapter.

"Upon the issuance of a permit by a city or town council, or board of supervisors, such council or board shall forthwith certify to the state permit board the action so taken. The state permit board shall promptly issue a state permit to all applicants to whom a permit has been issued by a city or town council or by a board of supervisors, which shall expire at the same time as the permit issued by said council or board, and shall forthwith certify to such council or board as to the issuance of each permit.

"Upon the revoking of a permit by any city or town council or board of supervisors, such council or board shall certify to the state permit board the action so taken, and thereupon the state permit board shall immediately cancel its permit to such permit holder, and such action of the state permit board and other granting authority shall be final."

In section 124.9 there is set forth the necessary inquiries which must be answered in making application for a class "B" permit.

Section 124.10 which relates to class "C" applications sets out facts that must be shown and are substantially similar to those required for class "B" applications.

Section 124.23 is as follows: "Investigation of applicant. The authorities empowered by this chapter to issue permits shall make a thorough investigation to determine the fitness of the applicant and the truth of the statements made in and accompanying the application, and the decision of such authority on the application shall be rendered within thirty days after the application is received."

I. Are there conflicting authorities set forth in section 124.5 and section 124.23? It will be observed that the initial application must be made. to the city or town council or board of supervisors who shall pass upon the question whether a permit shall be issued by the local unit. When and if a local permit is given, the local unit "* * * shall forthwith certify to the state permit board the action so taken * * *", and "The state permit board shall promptly issue a state permit to all applicants to whom a permit has been issued by a city or town council or by a board of supervisors * * *." The duty to make an investigation as provided for in section 124.23 is given to the authorities authorized to issue permits. Does this mean that the state permit board shall make an investigation in addition to the one made by the local unit? We do not think it does. This seems particularly true when the statute very definitely sets forth that upon the issuance of a local permit, the certification of that fact to the state permit board, and the payment of the state fee, a state permit shall be issued.

II. It should be kept in mind that under section 124.5 the power is given "* * * to the state tax commission to issue the class 'A' permit [to manufacture and sell at wholesale] * * * and to revoke the same for causes herein stated. * * *." The authority is not given the state permit board to issue class "A" permits or even to give a supplemental permit. If the legislature had intended to have the state permit board pass upon the fitness of applicants for local permits it would seem logical that they would, with greater justification, have authorized a review of the granting of a class "A" permit by the state permit board. This they did not do. And inasmuch as the statute definitely states that upon the certification of the issuance of the local permit the state permit shall be issued, it is difficult to read into

the statute an intent on the part of the legislature to have the issuance of the state permit subject to a further review by the state permit board.

 III. There is specific provision for a review by the state permit board in the case where there has been a hearing by a city or town council or board of supervisors relative to the cancellation or revocation of a permit and the permit has not been revoked or canceled. Section 124.4, 1950 Code. It will thus be observed that provision has been made for a review by the state permit board under certain circumstances. If the legislature had desired a review by the state board in regard to the issuance of a permit it could have been equally specific in so stating. A court, by interpretation, should not write into a law provisions which are not covered by the particular legislation. We have so held in the case of Case v. Olson, 234 Iowa 869, 872, 14 N.W.2d 717, 719, where we stated: "The courts confine themselves to the construction of the law as it is, not to amend or change under the guise of construction." See also Greene County Rural Electric Cooperative v. Nelson, 234 Iowa 362, 367, 368, 12 N.W.2d 886, 889.

 IV. In setting up the state permit board the legislature set out what its powers are. Section 124.3, 1950 Code. This board shall have power to "* * * issue state permits and shall have the power to revoke the same upon hearing * * *" as provided in chapter 124 and "* . * * to review actions of the city or town councils, and boards of supervisors, in refusing to revoke permits * * *." In granting powers to the state permit board no authority is given to it to review the action of the local unit which has issued a local permit by refusing to grant a state permit which under the statute should have been issued as a matter of right.

V. For the reasons previously stated we have concluded that the trial court properly overruled the motion to dismiss appellee's petition. We consequently affirm.—Affirmed.

BLISS, SMITH, MANTZ, OLIVER, MULRONEY, and HAYS, JJ., concur.

OLIVER, J., specially concurring; BLISS, SMITH, MANTZ, MULRONEY, HAYS, and WENNERSTRUM, JJ., join.

SMITH, J., specially concurring; MANTZ, OLIVER, MULRONEY, BLISS, HAYS, and WENNERSTRUM, JJ., join.

THOMPSON, C.J., and GARFIELD, J., dissent.

OLIVER, J. (specially concurring)—I agree with the majority opinion but would base the holding, in part, upon other considerations. In 1933 the Forty-fifth General Assembly enacted, as a revenue measure, a nonintoxicating liquor law. This Act, chapter 37, with various amendments by subsequent legislatures is now chapter 124, Code of Iowa 1950, entitled Beer and Malt Liquors. An amendment adopted in 1935 placed in the Act provisions relative to the creation, powers and functioning of the state permit board. Some of the provisions relative to the state permit board have been since changed by amendments.

Code section 124.2 provides in part:

"* * *

"3. 'Permit board' shall mean the state permit board composed of the chairman of the state tax commission, the secretary of state, and the auditor of state.

"* * *

"7. 'Permit' or 'license' shall mean an authorization issued by the state tax commission or by the city or town council of any city or town or by the board of supervisors of any county."

Section 124.3 provides the state permit board is created to promote uniform compliance with the provisions of this chapter. It shall issue *state permits* and shall have the power to revoke the same upon hearing and to review actions of city or town councils and boards of supervisors in refusing to revoke *permits*.

The foregoing definitions and provisions show chapter 124 provides for two kinds of permits: (1) "state permits" issued by the state permit board, and (2) "permits" issued by the tax commission, city or town councils and boards of supervisors. A difference between permit fees and state permit fees is recognized in other sections of chapter 124. Section 124.33 provides for the disposition of the revenues from *permit fees*. Section 124.5 provides the *state permit fee* is $3 and shall be used by the state

permit board to enforce the Act. In other words, *permit fees* are revenues while *state permit fees* are merely license fees.

Code section 124.5 authorizes the issuance of "B" and "C" permits by councils and boards of supervisors, through whom each applicant shall make application to the state permit board for a *state permit*. "The state permit board shall promptly issue a state permit to all applicants to whom a permit has been issued by a city or town council or by a board of supervisors." A council or board revoking a permit shall certify such action to the state permit board which shall immediately cancel its permit.

This is an action in mandamus to compel the state permit board to issue a *state permit* to an applicant to whom a *permit* has been issued by a city council. Plaintiff asserts the above quoted language in Code section 124.5 requires the state permit board to do this. The state permit board contends mandamus does not lie because its duty to issue a state permit to such applicant is not mandatory but depends upon its determination of the fitness of the applicant, etc., and hence is discretionary. It relies largely upon Code section 124.23, which provides in part: "The authorities empowered by this chapter to issue permits shall make a thorough investigation to determine the fitness of the applicant * * *."

This contention is necessarily based upon the premise the state permit board is among "the authorities empowered by this chapter to issue permits." That premise is false. The authorities so empowered are listed in subsection 7 of Code section 124.2, above-quoted. The state permit board is not included in the list. It is empowered to issue "state permits" only, as distinguished from "permits." Hence, the provisions of section 124.23 do not refer to the state permit board.

Language similar to that in question appears in Code section 124.30 which requires the revocation of permits "by the authorities issuing same" for various offenses, including violations of ordinances. For the reasons above-noted it is apparent the state permit board is not one of such *authorities* and that section 124.30 does not apply to it. However, were the state permit board one of such *authorities* it would be virtually impossible for it to perform the duties imposed on it by this section without maintaining a representative in each community.

The language in section 124.23 is not unusual. It should be interpreted in accordance with definitive provisions of chapter 124.

SMITH, J. (specially concurring)—While agreeing with both the majority opinion and Justice Oliver's special concurrence, I feel an additional word should be said concerning the contention that "power to revoke implies the power to deny in the first instance."

The distinction between "permits" (A, B and C) and "state permits" has already been pointed out in Justice Oliver's special concurring opinion. Code sections 124.2(7) and 124.5. The present action is brought to compel defendant State Beer Permit Board to issue its own *state permit*. Plaintiff has already been issued a *permit* (class B) by the town of Bevington. No question of its revocation is involved.

The power of the defendant-board both to issue and to revoke *state permits* is found in the last two paragraphs of section 124.5. The power to issue depends on the issuance of the permit (class B or C) and the power to cancel is conditioned upon the revocation of such class B or C permit.

Code section 124.4 confers on defendant State Beer Permit Board some right of review of actions of city or town councils or boards of supervisors in refusing to revoke *permits* (class B or C, as the case may be). See also Code section 124.3, last paragraph. But the only provision authorizing defendant-board to revoke a *state permit* is found in section 124.5: "Upon the revoking of a *permit* by any city or town council or board of supervisors, such council or board shall certify to the state permit board the action so taken, and thereupon the state permit board *shall immediately cancel its permit* [state permit] to such permit holder * * *." (Italics supplied.)

Manifestly this limited power to cancel a state permit after it has been issued has no bearing on defendant's claimed power to refuse to issue such state permit in face of the mandatory language of Code section 124.5: "The state permit board *shall promptly issue* a state permit to all applicants to whom a permit has been issued by a city or town council or by a board of supervisors." (Italics supplied.)

Plaintiff here was issued her permit by the proper issuing body. Until that permit is revoked she is entitled to a state permit. The provisions requiring defendant-board to review a refusal or failure of the issuing body to revoke a class B or C permit have nothing to do with the issue here. There is no statutory power to revoke upon which to predicate a power to deny in the first instance.

THOMPSON, C. J. (dissenting)—Following the sound principle that an ounce of prevention is more valuable than a pound of cure, the courts long ago adopted and have consistently adhered to the rule that the power to revoke a license necessarily implies the power to deny it in the first instance. A search of the majority and specially concurring opinions herein (except for the attempt made·in the concurring opinion of Judge Smith, written after the point was raised by this dissent)· fails to disclose any answer to the pertinent question as to why the rule does not govern the case at bar. In fact, neither opinion so much as recognizes it. But the principle is present, is applicable, and cannot be avoided by ignoring its existence. Because it is controlling in this case I am unable to agree with the majority.

I. It is apparently the holding of the majority and specially concurring opinions that the state permit board has only reviewing powers; that is, it cannot act until the city or town council or board of supervisors, as the case may be, has either refused to revoke or has failed to take any action. The majority opinion holds that the state permit board has no discretion in issuing its license in the first instance, but must perforce grant the permit as a matter of course when it is advised that the council or the supervisors has granted a license to the applicant. In the absence of legislative action, this will be the law in Iowa upon the filing of the majority opinion herein. This result is not in accordance with well-considered and long-established legal principles, and ends in absurdity.

The duties and powers of the state permit board are defined in section 124.4 of the Code of 1950. The material parts of this statute are set out in the majority opinion. It is necessary only

to call attention to two provisions of this section to demonstrate the applicability of the rule of law above-cited.

After providing for a review of the action of any council or board of supervisors (referred to hereinafter for brevity as "The lower boards"), section 124.4 says if "such governing bodies have failed to take action, the state permit board shall thereupon fix a date for the hearing * * *." This hearing is thus initiated by the state permit board upon its own motion. It has the power, in a proper case, to revoke the license, although the majority here holds that it has no right to deny it in the first instance.

Again the intent of the legislature to authorize the state board to initiate and carry through proceedings for the revocation of class "B" and "C" permits is shown in the final paragraph of the section referred to. This provides that when a petition for revocation has been filed with the lower board by ten or more citizens, or "where the state permit board from its investigation asks that a hearing be had on the revocation of a permit," if the lower board refuses to hold such hearing the state permit board may upon its own motion conduct such hearing and may revoke the permit. Again the process may be initiated and carried through by the state board. We are asked to accept an interpretation that the state board must issue the permit in the first instance, but may at once commence proceedings to revoke it.

The principle that the power to revoke a license implies the power to deny in the first instance is in accord with common sense and simple logic, and has been followed in Iowa and elsewhere, without deviation or criticism so far as a search of the authorities reveals. In Bankers Life & Casualty Co. v. Alexander, 242 Iowa 364, 375, 45 N.W.2d 258, 265, this court said:

"If the commissioner has power to revoke plaintiff's license upon the ground asserted by him, he may refuse to issue a license upon such ground. His power to refuse a license is coextensive with his power of revocation. It would of course be useless to compel issuance of a license which might at once be revoked."

The question was directly before the Oklahoma Supreme Court in Bankers Union Life Ins. Co. v. Read, 182 Okla. 103, 105,

77 P.2d 26, 28. The Oklahoma statute gave the insurance commissioner the right to "revoke or suspend all certificates of authority" granted to a foreign insurance company if he found such company to be in an unsound condition. No specific statute gave him power to deny the certificate in the first instance. This point was raised by counsel for the insurance company. But the Oklahoma Supreme Court said:

"If a company presented its application with all the forms prescribed by statute, and if the insurance commissioner, after investigation, should be of the opinion that said company was in an unsound condition, or that its condition was such as to render its proceedings hazardous to the public, and if despite his opinion he could not refuse to issue a license, clearly, under section 10469, supra, it would be his duty, after issuing the license, to promptly revoke the certificate of authority granted. *To compel him to do that which he must promptly undo would be an absurdity.*" (Italics supplied.)

Certain rules of statutory construction followed · by the Oklahoma court are likewise applicable here. Thus it will be presumed that the legislature intended to give effect to all the provisions of the Act, and presumptions will ·be indulged in against absurd consequences. When a definite legislative intent is manifested it will be presumed that the subsidiary provisions of the Act are in harmony therewith. See also State ex rel. National Life Assn. v. Matthews, 58 Ohio St. 1, 49 N. E. 1034, 40 L. R. A. 418.

By way of illustration of the effect of the holding of the majority herein, let us assume that the lower board has issued a class "B" or "C" permit to an applicant not of good character. Good character is an essential requirement. Sections 124.9 and 124.10, Code of 1950. See also Curtis v. DeGood, 238 Iowa 877, 29 N.W.2d 225; Madsen v. Town of Oakland, 219 Iowa 216, 257 N.W. 549. The state permit board, although having knowledge of this lack of a necessary element, must now issue its permit without cavil or question. But it then becomes its right, in fact its duty, to proceed to revocation. The law, as interpreted by the majority, is here requiring of the state permit board a vain thing, a useless and absurd thing.

1162

II. It is suggested that, if the state board should be held to have the right to deny a permit, there is no provision for a hearing for the applicant; that his cause would be determined and his rights affected without notice to him. The short answer to this is that the statutes likewise make no provision for a hearing before the lower boards when he presents his application to them. His application must state his case, and if it is unjustly denied he has his recourse to the courts. No reason appears why it should be considered a graver injustice to permit the state board to pass upon his application without a formal hearing than for the lower board so to do. When the application is filed the applicant knows it is before the governing body and will be acted upon; while he might have no knowledge of an action to revoke unless notice were provided for and a hearing set.

I see no logical escape from the conclusion that the state permit board being given the power to revoke licenses must likewise have the power to deny them originally. I would reverse the holding of the lower court.

GARFIELD, J., joins in this dissent.