**UNI–UNITED FACULTY, Appellant,**

v.

**IOWA PUBLIC EMPLOYMENT RELATIONS BOARD,**
Appellee,

**State of Iowa, Board of Regents,**
Intervenor–Appellee.

No. 94–1669.

Supreme Court of Iowa.

March 20, 1996.

Charles E. Gribble and Pamela J. Prager of Gribble & Prager, Des Moines, for appellant.

Jan V. Berry, Des Moines, for appellee.

Joseph E. Flynn, St. Paul, Minnesota, and Gordon Allen, Deputy Attorney General, for intervenor-appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

The agency action under judicial review is the public employment relations board's (PERB) decision in a prohibited practice proceeding initiated by UNI–United Faculty (Union) against the Iowa state board of regents (State) and the University of Northern Iowa (UNI).

Union alleged the State and UNI violated Iowa Code section 20.10(2)(a), (e), (f) (1989) when the State refused Union's request to collectively bargain over distribution of $275,000 earmarked by the Iowa legislature for teaching excellence awards in UNI's general appropriation legislation for the fiscal year ending June 30, 1991.

PERB's final decision concluded that Union failed to establish a prohibited practice by the State or UNI. The district court affirmed PERB's decision on judicial review and so do we.

I. *Background facts and proceedings.* Petitioner Union represents instructors, assistant professors, associate professors, and professors employed by UNI. Union and the Iowa state board of regents, the agency

which governs UNI, have negotiated two-year collective bargaining agreements since 1977. Each collective bargaining agreement has contained the following formula to distribute negotiated total wage increases to bargaining unit members: 53.5% in "across-the-board" percentage increases to each faculty member's base salary; 16.5% in "flat dollar" increment increases to each faculty member's base salary; and 30% in "individual salary adjustment" increases awarded to certain faculty members selected by UNI. Only the latter category of salary adjustments is relevant in the present dispute.

In March 1989, Union and the State entered into a two-year collective bargaining agreement for the 1989–91 academic years. The agreement provided in part:

**Individual Adjustment Increase**

Effective with the 1990–91 appointment year, the full-time faculty members of the bargaining unit who were employed on April 30, 1990, as full-time members of the bargaining unit shall receive an average increase of seven hundred seventy-five dollars ($775) per full-time faculty member which money the Board [of Regents] may use, at its discretion, for individual salary adjustments (including merit increases, adjustment for market conditions, and promotions), the distribution of which shall not be subject to the grievance procedure. [Union] shall be provided, as soon as reasonably practicable, a list of the recipients and amounts of individual adjustment awards.

UNI's collective bargaining agreements with Union have historically, and at all times material here, stated that UNI may use the 30% individual salary adjustment money, at its discretion, for merit increases,[1] adjustments for market conditions, and promotions. The bargaining agreements have also provided that UNI's discretionary distribution of individual salary adjustments is not subject to the contractual grievance procedure.

For the fiscal year 1990–91, the individual salary adjustments contained in the collective bargaining agreement totaled 2.1%, or $449,-

512 according to Union's records, of the 7% total salary increase for the fiscal year.

In May 1990, as the second year of the parties' 1989–91 collective bargaining agreement approached, the legislature enacted and the governor approved S.F. 2423, which became 1990 Iowa Acts chapter 1272, a bill providing appropriations to fund UNI's general operations. S.F. 2423 provided in pertinent part:

4. UNIVERSITY OF NORTHERN IOWA

a. For salaries, support, maintenance, equipment, miscellaneous purposes, and for not more than the following full-time equivalent positions:

       .................... $ 53,563,012
       ................ FTEs   1,385.83

As a condition, limitation, and qualification of moneys appropriated in this paragraph, *from moneys available to the university of northern Iowa, $275,000 shall be expended for teaching excellence awards to teaching faculty members and teaching assistants.*

Teaching excellence awards shall be granted to faculty members and teaching assistants for excellence in the quality of classroom instruction. An award shall be built into the faculty member's or teaching assistant's base salary. *Moneys appropriated for teaching excellence awards shall not result in a negative impact upon a collective bargaining agreement between an employee organization and the university.* Not later than December 1, 1990, the state board of regents shall report the names of recipients of teaching excellence awards, and the amounts of the awards granted, to the joint education appropriations subcommittee and to the legislative fiscal bureau.

1990 Iowa Acts ch. 1272, § 14(4)(a) (emphasis added).

Union agrees that "teaching excellence awards" referred to in S.F. 2423 are one component of the individual adjustment increase category within the parties' collective

---

**1.** Merit increases are based on an annual evaluation of the quality of each faculty member's     teaching, research, and professional service.

bargaining agreement. S.F. 2423 required only $275,000 of the total UNI appropriations of $53,563,012 to be distributed by UNI as "teaching excellence awards." *Id.* For fiscal year 1990–91, the collective bargaining agreement figure for individual salary adjustments, or $449,512, well exceeded $275,000.

In response to the general assembly's decision to earmark $275,000 of the total UNI appropriation for rewarding teaching excellence, Union's president sent a letter to the president of the Iowa state board of regents. In the letter, Union expressed its belief that the $275,000 earmarked appropriation was a mandatory subject of bargaining and requested negotiations with the State and UNI concerning distribution of the money. *See* Iowa Code § 20.16. In a reply letter, the State board of regents executive director refused Union's request to negotiate. The State did not believe the $275,000 was a subject of bargaining because (1) the money did not represent an additional appropriation and (2) the $275,000 was a portion of the individual salary adjustment increase already provided for pursuant to the parties' 1989–91 collective bargaining agreement. Although Union ultimately agreed with proposition (1), it steadfastly disputes the State's position that the $275,000 was included in the total salary increase of 7%, as negotiated by the State and Union, for the 1990–91 fiscal year.

In September 1990, as a result of the State's refusal to bargain, Union filed a prohibited practice complaint with PERB alleging that the State and UNI violated Iowa Code section 20.10(2)(a), (e), (f). *See* Iowa Code § 20.11(1). Union requested that PERB order the State to bargain over distribution of the $275,000. Because distribution of individual adjustment increases, of which teaching excellence awards are a component, is not subject to the parties' contractual grievance procedure, Union followed the proper procedure by filing an action with the board.

The case was tried before an administrative law judge (ALJ) designated by PERB. *See id.* § 20.11(2). In a proposed decision and order entered pursuant to Iowa Code section 17A.15(2), the ALJ determined that the State violated Iowa Code section 20.10(2)(a), (e), (f) by refusing to bargain with Union and interpreting S.F. 2423 in a manner which allegedly had a negative impact on the 1989–91 collective bargaining agreement. The ALJ ordered the State, on behalf of UNI, to collectively bargain with Union over distribution of $275,000 for teaching excellence awards.

The State appealed the ALJ decision to PERB. *See id.* § 20.11(2). In a nineteen page final agency action, PERB concluded the State and UNI did not violate section 20.10(2) because they had no duty to bargain the questioned issue and, therefore, PERB dismissed Union's prohibited practice complaint.

Pursuant to Iowa Code chapter 17A, Union filed a petition for judicial review before the district court seeking to reverse the respondent PERB's decision. *See id.* §§ 20.11(5), 17A.19(1). The State intervened and argued in support of the board's decision. On judicial review, the district court affirmed the board's decision, finding Union failed to establish any basis requiring a grant of judicial review relief. *See id.* § 17A.19(8).

Union appealed. *See id.* § 17A.20.

■■■ II. *Standard of review.* Standards for reviewing the district court's ruling on a petition for judicial review of a final agency action are well-established:

> When, under the [Iowa administrative procedure Act], this court reviews a district court decision on the validity of an agency action, we ask only whether the district court has correctly applied the law. The district court is itself acting "in an appellate capacity to correct errors of law on the part of the agency. In our review of such action by the district court, we merely apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court." When the conclusions are the same, we must affirm.

> Because "law issues are determinable by the judiciary alone," we owe an agency only limited deference on matters of law, including statutory interpretation. But "[w]e are not free to interfere with [an agency's] findings [of fact] where there is

conflict in the evidence or when reasonable minds might disagree about the inferences to be drawn from the evidence whether disputed or not." We must ask "not whether the evidence might support a different finding but whether the evidence supports the findings . . . actually made. Hence the findings of [an agency] are binding on appeal unless a contrary result is demanded as a matter of law."

*Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 908 (Iowa 1987) (citations omitted). In sum, review pursuant to Iowa Code section 17A.20 is at law and not de novo. *Iowa–Illinois Gas & Elec. Co. v. Iowa State Commerce Comm'n*, 412 N.W.2d 600, 604 (Iowa 1987); *City of Davenport v. Public Employment Relations Bd.*, 264 N.W.2d 307, 311 (Iowa 1978).

III. *Interpretation of S.F. 2423.* The result in the present case turns squarely on how we interpret S.F. 2423 and what effect, if any, that appropriations bill had on the State's and UNI's duty to collectively bargain under chapter 20 of the Iowa Code.

A. *The parties' contentions.* Union contends that the State violated Iowa Code section 20.10(2) when it refused to negotiate over the distribution of $275,000 earmarked by the general assembly for teaching excellence awards for the 1990–91 fiscal year. Union agrees with the State that there was no additional appropriation to UNI of $275,000 to fund teaching excellence awards in 1990–91. Union argues, rather, that UNI's general appropriation for fiscal year 1990–91, or S.F. 2423, required the State to distribute $275,000 of that appropriation to faculty members for teaching excellence *over and above* or *in addition to* the $449,512 negotiated increase for "individual salary adjust-

ments" contained in the 1989–91 collective bargaining agreement for fiscal year 1990–91.

By refusing to negotiate separately over the $275,000 earmarked for teaching excellence awards, contends Union, the State caused a negative impact on the parties' collective bargaining agreement.[2]

PERB, in defense of its decision, asserts S.F. 2423 imposed no additional duty to bargain on the State and, even if we find a duty was imposed, a breach of that duty did not constitute a prohibited practice within the meaning of Iowa Code chapter 20. PERB ruled that UNI met its obligation under S.F. 2423 to distribute $275,000 of the general appropriations to reward teaching excellence. S.F. 2423, according to PERB, did not require anymore than what the State did to meet its duty to recognize teaching excellence. The legislation actually limited UNI's discretion under the collective bargaining agreement as UNI previously had the power to distribute the entire individual salary adjustment increase, of which teaching excellence was a part, in any proportions that it desired.

As intervenor, the State also disputes Union's contentions and takes the position that it had no additional duty to bargain under S.F. 2423 because the general assembly did not so state and the parties never agreed to an over and above distribution, as contended by Union.[3] According to the State, it distributed approximately $275,000 to faculty members for teaching excellence for fiscal year 1990–91, an amount within the individual adjustment increase limits set forth in the parties' 1989–91 collective bargaining agreement. Thus, the State argues, it complied with both the legislative directive set forth in

2. We note Union does not allege in this case a direct violation of the collective bargaining agreement, *i.e.* it does not contend UNI unilaterally changed a mandatory subject of bargaining contained in the parties' 1989–91 agreement. Nor does Union allege that a violation was committed in connection with the contract negotiations which resulted in the 1989–91 collective bargaining agreement.

3. As the State admits, this was not the case in fiscal year 1988–89 when the State and Union agreed to distribute $250,000 in monies ear-

marked by the general assembly for rewarding teaching excellence, similar to the $275,000 earmarked in the present case, over and above the previously bargained for individual salary adjustment increases. *See* 1988 Iowa Acts ch. 1284, § 52(4)(a). The memorandum of agreement modifying the 1987–89 collective bargaining agreement expressly stated it did not set precedent for future agreements, however.

Union and the State did not enter into a similar memorandum of understanding concerning S.F. 2423.

S.F. 2423 and the terms of the parties' agreement.

Furthermore, the State contends there has not been a "negative impact" on the collective bargaining agreement under its interpretation of S.F. 2423 because the faculty members already received in excess of $275,000 as part of the negotiated individual salary adjustment increases for fiscal year 1990–91. Its interpretation of S.F. 2423, contends the State, is the reason it declined Union's request to bargain over the $275,000 earmarked by the general assembly as "teaching excellence awards."

If Union's interpretation of S.F. 2423 is correct, then the State violated its duty under S.F. 2423 and possibly the statutory prohibitions of Iowa Code section 20.10(2)(a), (e), (f). If the State's interpretation is correct, then S.F. 2423 imposed no additional duty to negotiate with Union and the district court correctly affirmed PERB's dismissal of Union's prohibited practice complaint against the State and UNI.

B. *Analysis.* Without giving deference to PERB's interpretation of S.F. 2423, we believe PERB made the correct decision to dismiss Union's prohibited practice complaint against the State and UNI. Accordingly, we reach the same legal conclusion as the district court, that PERB did not violate the applicable standards of review set forth in Iowa Code section 17A.19(8) when it dismissed Union's complaint.

1. *Statutory framework for bargaining.* Along with S.F. 2423, Iowa Code chapter 20 and the administrative procedures set forth in chapter 17A govern this dispute. Under Iowa Code chapter 20, the public employment relations Act, the State board of regents and UNI are public employers, *see* Iowa Code § 20.3(11), and Union is an employee organization, *see id.* § 20.3(4), for the purpose of facilitating labor relations. The State board of regents, an agency organized under chapter 262, governs several of Iowa's public educational institutions including UNI. *See id.* § 262.7(3). The State has the power to carry out collective bargaining and related responsibilities provided for under chapter 20 on behalf of its unionized institutions. *See id.* § 262.9(15).

Upon the request of a certified employee organization, a public employer has a general duty to collectively bargain over mandatory subjects of bargaining. Iowa Code §§ 20.16, 20.9. A collective bargaining agreement between an employee organization and the State, as public employer, such as the one in the present case, "shall be for two years and [its provisions] ... shall not provide for renegotiations which would require the refinancing of salary and fringe benefits for the second year of the term of the agreement...." *See id.* § 20.15(6).

Violations of the general duty to collectively bargain over mandatory subjects of bargaining are codified in Iowa Code section 20.10, which states in relevant part:

(2) It shall be a prohibited practice for a public employer [such as the State/UNI] or the employer's designated representative willfully to:

(a) Interfere with, restrain or coerce public employees in the exercise of rights granted by this chapter.

. . . .

(e) Refuse to negotiate collectively with representatives of certified employee organizations [such as Union] as required in this chapter.

(f) Deny the rights accompanying certification or exclusive recognition granted in this chapter.

Created by the general assembly, PERB has the duty to administer the provisions of chapter 20 of the Iowa Code. *See* Iowa Code §§ 20.5, 20.6(1). The board is an administrative agency subject to the provisions of chapter 17A. *See* Iowa Code § 17A.2(1); *Maquoketa Valley Community Sch. Dist. v. Maquoketa Valley Educ. Ass'n*, 279 N.W.2d 510, 512 (Iowa 1979); *City of Davenport*, 264 N.W.2d at 310.

■ 2. *No over and above distribution or bargaining requirement in S.F. 2423.* Whether PERB correctly ruled that the State and UNI did not violate the statutory duty to bargain as alleged by Union is the issue preserved for our resolution. This determination rests first and foremost upon

PERB's interpretation of S.F. 2423 in light of the factual record. We must do the same.

Our interpretation of S.F. 2423 begins with the words used by the general assembly:

As a condition, limitation, and qualification of moneys appropriated in this paragraph, from moneys available to the university of northern Iowa, $275,000 shall be expended for teaching excellence awards to teaching faculty members and teaching assistants.

... Moneys appropriated for teaching excellence awards shall not result in a negative impact upon a collective bargaining agreement between an employee organization and the university.

1990 Iowa Acts ch. 1272, § 14(4)(a).

The first and most noteworthy aspect of this legislation is that it does not expressly require an "over and above" distribution of $275,000 to reward teaching excellence as contended by Union. Although Union uses the phrase "over and above" throughout its appeal brief, the phrase simply does not appear in the legislation. In fact, no language in S.F. 2423 can be reasonably inferred to require an over and above distribution. The general assembly is presumed to know that the parties were about to enter into the second year of its two year collective bargaining agreement. As the general assembly did in 1987, it has the ability to expressly state that certain salary adjustment funds are being provided "in excess of the amount necessary to fund the collective bargaining agreement...." *See* 1987 Iowa Acts ch. 227, § 12(5). Without question, it did not use such language in S.F. 2423. *See* 1990 Iowa Acts ch. 1272, § 14(4)(a).

Second, S.F. 2423 does not expressly require that the parties engage in additional bargaining concerning the appropriation. The general assembly could have done so, but did not. *See* Iowa R.App.P. 14(f)(13) ("In construing statutes the court searches for the legislative intent as shown by what the legislature said, rather than what it should or might have said."); *Ruthven Consol. Sch. Dist. v. Emmetsburg Community Sch. Dist.*, 382 N.W.2d 136, 140 (Iowa 1986). Therefore, we conclude S.F. 2423 did not impose a duty on the State or UNI to bargain with Union,

and it is not the role of the court to legislate into S.F. 2423 such a duty. *See Ruthven Consol. Sch. Dist.*, 382 N.W.2d at 140; *Eittreim v. State Beer Permit Bd.*, 243 Iowa 1148, 1155, 53 N.W.2d 893, 897 (1952).

3. *No negative impact on collective bargaining agreement.* Lastly, we reject Union's contention that PERB's interpretation of S.F. 2423 resulted in a "negative impact" upon the parties' 1989–91 collective bargaining agreement. In fiscal year, 1990–91, substantial evidence in the record reflects that the UNI faculty received the salary increases bargained for and set forth in the collective bargaining agreement, including the 30% for individual adjustment increases. Thus, we agree with PERB's conclusion that the State complied with S.F. 2423.

Under the 1989–91 collective bargaining agreement, UNI had complete discretion on where and to whom to distribute monies earmarked for individual adjustment increases. S.F. 2423 expressly limited this discretion by mandating a $275,000 floor on teaching excellence awards, provided this floor does not have a negative impact on the collective bargaining agreement, to be built into the recipients' base salaries. The UNI faculty recipients had the added advantage that the excellence award was added to their base salaries. In fiscal year 1990–91, based on Union's own numbers, the collective bargaining agreement provided $449,512 for individual salary adjustment increases, of which Union concedes teaching excellence awards is one component. After spending nearly $275,000 on rewarding teaching excellence, UNI had approximately $175,000 remaining under the collective bargaining agreement to distribute within its discretion to faculty members for research, professional service and adjustments for market conditions.

We agree with PERB that the State met its obligations under both the collective bargaining agreement and S.F. 2423. We conclude, therefore, PERB's interpretation of S.F. 2423 in no way resulted in a negative impact upon the parties' 1989–91 collective bargaining agreement.

IV. *Disposition.* Union makes other contentions in which we find no merit. After

reviewing the public employment relations board's final agency action under the applicable standards set forth in Iowa Code section 17A.19(8), we reach the same conclusion as the district court; therefore, we affirm the court's judgment which upheld PERB's decision dismissing Union's prohibited practice complaint against the State and UNI.

**AFFIRMED.**